May Term,
1855.

LAUGHLIN
v.
THE PRESI-
DENT, &c.,
OF LAMASCO
CITY.

</div>

---

LAUGHLIN and Others *v.* THE PRESIDENT AND TRUSTEES
OF LAMASCO CITY.

| 6 | 223 |
| 139 | 681 |
| 6 | 223 |
| 145 | 84 |

Bill by the authorities of *Lamasco* to enjoin the defendants from constructing a wharf, at or near said place, for the reasons, 1. That they were constructing their wharf in violation of an agreement; and, 2. That the wharf, when constructed, would be a nuisance. On the first point the bill alleged that the plaintiffs adopted the same plan of wharf as that of the defendants adjoining, and that the plan was made known to the defendants, or to their agents residing at *Evansville*, and seemed to be so far satisfactory that they promised to conform thereto in any wharf which they might ultimately build adjoining it. The bill also alleged that the plaintiffs were the owners of the territory on which their wharf was to be erected.

*Held*, that the allegations were sufficiently certain.

*Held*, also, that the title of the plaintiffs was sufficiently alleged.

A bill for an injunction, under the R. S. 1843, was not required to be sworn to.

A wharf is not, *per se*, a public nuisance, which the Courts will enjoin.

An injunction will not be allowed where the injury can be compensated by damages.

In cases of conflicting evidence, where the injury to the public is doubtful, if not imaginary, an injunction will not be allowed; nor will it be allowed when the alleged nuisance is merely eventual or contingent.

May Term,
1855.

LAUGHLIN
v.
THE PRESI-
DENT, &c.,
OF LAMASCO
CITY.

Wednesday,
May 30.

APPEAL from an order of injunction granted by the associate judges of the *Vanderburgh* Circuit Court in vacation.

STUART, J.—The appellees filed their bill to enjoin the appellants from constructing a wharf on the *Ohio* river, at or near *Lamasco*. A temporary injunction was granted by the associate judges of *Vanderburgh* county in vacation. The *Laughlins* appeal.

The grounds upon which the authorities of *Lamasco* seek an injunction are these:

1. Because the appellants were constructing their wharf in violation of an agreement.

2. Because the wharf, when constructed, would be a nuisance.

On the first point, the bill alleges that the appellees adopted the same plan of wharf as that of the appellants adjoining; that said plan was made known to the *Laughlins*, or to their agents residing at *Evansville*, and seemed to be so far satisfactory that they promised to conform thereto in any wharf which they might ultimately build adjoining it.

It is objected that this allegation is too uncertain. That would, perhaps, be the first impression. But upon looking at it more closely, in connection with the context, and remembering that "or" may sometimes mean "and," (*Rees* v. *Abbott*, Cowp. 832,) we are of opinion that the allegation, though informal, is substantially good. As an allegation of notice, &c., it is superseded by the subsequent clause alleging an agreement on the part of the *Laughlins*. In what manner the agreement was made, is not alleged; nor was such allegation necessary. Whether it was in writing or supported by a consideration, are questions which can arise only on the evidence, &c. Taking the whole paragraph together, we think the agreement is alleged with sufficient certainty to entitle the plaintiffs to address evidence to that point.

Some objection is made to the vagueness of the allegation of title. It is, in general, necessary to aver title; and when the plaintiff's right appears doubtful, the Court

May Term,
1855.

LAUGHLIN
v.
THE PRESI-
DENT, &c.,
OF LAMASCO
CITY.

always refuses to interfere. Eden on Injunctions, 380. It is alleged here that the complainants are the owners of the territory on which their wharf is to be erected. This is informal, and perhaps in a case where the title was the principal issue, it might be adjudged, on demurrer, insufficient. But for the purposes sought to be attained by this bill, we are of opinion that the right of the complainants is sufficiently alleged.

It is further objected that the bill is not sworn to. Under our former practice acts of 1831 and 1838, a bill for an injunction was required to be verified. R. S. 1831, pp. 395-6. This is also the *English* practice. Eden, 274. But in the revised statutes of 1843, which are the law of this case, the provision requiring the bill to be verified in such cases, is omitted. R. S. 1843, pp. 851, 852, 853. Whether the omission occurred from oversight or design, the Courts can not supply it. Under that statute, the bill without oath is not objectionable.

The particulars in which it is alleged that the *Laughlin* wharf differs from the *Lamasco* wharf, and consequently from the kind of wharf agreed to be built, are, that the projection into the river is fifteen feet further, and the grade at an average of from four to five feet higher, than the *Lamasco* wharf. It is therefore insisted that the consequences, when it is erected, will be, to create a nuisance by the formation of bars, &c., to the permanent and irreparable injury of the *Lamasco* wharf.

On the hearing before the associate judges, both parties filed affidavits.

Accompanying the bill and affidavits, is a plat of the ground, embracing the *Lamasco* wharf, *Laughlin's* wharf, *Ross'*, and other wharfs adjoining.

The city authorities file the affidavits of *Woodward, Bradford* and *Walker*. It appears that the *Lamasco* and *Laughlin* wharfs were both platted and surveyed by *Woodward* and *Bradford*, who are professional engineers. From the plat, it is shown that the *Laughlin* wharf differs from the *Lamasco* wharf in two particulars. 1. It is higher.

VOL. VI.—15

May Term,
1855.

LAUGHLIN
v.
THE PRESI-
DENT, &c.,
OF LAMASCO
CITY.

2. The toe of the wharf is extended fifteen feet further into the river beyond low-water mark.

The injuries, in their opinion, resulting from this want of uniformity in the wharfs, will be—

1. The inconvenience to steamers approaching and leaving the *Lamasco* wharf.

2. The difference in elevation would, in high water, create an eddy over, and thus cause large deposits of mud on the *Lamasco* wharf, to its continual and permanent injury.

3. The danger of the formation of a mud bar in front.

It further appears that the *Laughlins* adopted the plan of their wharf against the advice of the engineers, who gave as an additional reason against such adoption, that the want of uniformity would offend the eye.

The *Laughlins*, in resisting the injunction, introduce the affidavits of *Ross*, *Rowley*, *Laughlin*, jr., and *Orr*.

*Ross* is the contractor actually engaged in erecting both wharfs. These affidavits go to the following points:

1. That the supposed injuries to result from the want of uniformity are altogether conjectural.

2. That the work on the *Laughlin* wharf was three-fourths done, at a cost of 4,000 dollars; and that to stop the work in its imperfect state would be to expose it to serious injury, perhaps total loss.

3. That *A.* and *J. Laughlin* were residents of *Pittsburgh, Pennsylvania*, and had not been in *Indiana* for a long time prior to the pretended agreement set up in the bill; that *Laughlin*, jr., and *Orr* had for many years been their agents, having entire control of their business in *Vanderburgh* county; that no such agreement had ever been made with them as such agents; and that none such had ever, in their belief, been made with their principals.

4. That the work had been progressing for months under the eye of the complainants, without objection, &c.

5. The situation of the ground, and the reasons for the projection and elevation of the *Laughlin* wharf beyond and above the *Lamasco* wharf, are minutely pointed out.

The first position assumed in support of the injunction, viz., that the *Laughlins* were building their wharf in violation of an agreement, is not sustained by the affidavits. Nothing is said in the complainants' evidence about an agreement. It is only made to appear that the *Laughlins* did not pay much regard to the advice of the engineers. On the other side, the affidavits make out a case, which, considering the *alibi* of the *Laughlins*, seems quite conclusive against the position that there was any understanding or agreement in relation to the plan of construction.

So that the correctness of granting the injunction must depend solely on the second position, viz., that the *Laughlin* wharf, when erected, will be a nuisance.

This position can not, we think, be sustained.

In the first place, a wharf is not of itself necessarily such a nuisance, the erection of which the Courts will enjoin. A wharf does not import, *per se*, irreparable mischief. The injuries to flow from it do not readily appear— at least they are not those of that permanently injurious character contemplated by the authorities. 6 Paige 83.— 7 Met. 398. If an injury at all, in the present instance, it is clearly such as may be so compensated by damages as to check its continuance in an injurious form. 2 Story Eq., title "Injunction."

The earlier doctrine was, that injunctions would be granted against such things as were clearly public nuisances. A trial of the facts at law was then directed, and the final decree moulded according to the verdict. But, from a review of the authorities in 2 Story Eq., it would seem that the Courts have latterly exercised this extraordinary power in a very cautious and guarded form. 2 Story Eq. 271, note 1.

Besides, in the present case, the evidence, which is all mere matter of opinion, is by no means concurrent. The engineers see nothing but disastrous results. *Ross*, the builder of these wharfs, is of opinion that these disasters are visionary—that they are entitled to little weight—that experience alone can attest what results will flow from the difference in the wharfs. In such cases of conflicting

May Term,
1855.

LAUGHLIN-
v.
THE PRESI-
DENT, &c.,
OF LAMASCO
CITY.

evidence, and the injury to the public doubtful, if not imaginary, the injunction should not be granted. Story, *supra,* title "Injunction." So when the alleged nuisance is merely eventual or contingent, Courts will not grant an injunction. 9 Paige 171. In this connection, *Kent,* chancellor, holds the following language: "In offences against the public, not touching the enjoyment of property, it ought not to be brought into a Court of Chancery, which was intended only to deal in matters of civil right resting in equity, or where the law was not sufficiently adequate. Nor ought the process of injunction to be applied but with the utmost caution. It is the strong arm of the Court, and to render its operation benign and useful, it should be exercised with great discretion, and only upon necessity." *The Attorney-General* v. *The Utica Insurance Company,* 2 J. C. R. 372.

The wharf in question appears to encroach in some measure upon the public thoroughfare known as the *Ohio* river. But it does not seem very probable that it will interfere with or incommode the public. And as the wharf is not a nuisance in itself—is not likely to become so—and the alleged injuries feared as impending, being, according to the case made by the affidavits, more fanciful than real, we think it one of the cases contemplated by the authorities, in which a Court of Equity will refuse to act without an adjudication at law.

If the complainants place it on the ground of a private nuisance, they concede too much. For it is not to prevent every inconvenience or injury that the Courts will interpose by injunction. That extraordinary power will be exercised in such cases only as can not be adequately compensated, and thus their repetition or continuance prevented, by damages at law. Clearly the case made by complainants, even if better sustained by the affidavits, is not one of that class.

There is great force in the remark, that "the Courts should be slow to interpose, where the thing to be stopped, while it is highly beneficial to one party, may not possibly be prejudicial to any one. The great fitness of pausing

long before we interrupt men in the improvement of their property, is manifest."

May Term, 1855.

From the case made, as it appears in the light of these authorities, we are of opinion the injunction was improvidently granted, and should be dissolved.

*Per Curiam.*—The order granting the injunction is reversed with costs. Cause remanded, &c.

*C. Baker*, for the appellants.

*J. G. Jones* and *J. E. Blythe*, for the appellees.