Rick A. WILSON, Jerrel A. Schultz, and Walter Lewis Sayers, Jr., Plaintiffs,

v.

Tommy ROBINSON, Individually and In His Official Position as Sheriff-Elect of Pulaski County, Arkansas, Defendant.

James R. BUMP, Charles W. Perry, III, Vera A. Davis, Don Briley, Lewis W. Biggs, Velma D. Lake, Robert E. Lee Brown, John C. Poe, John Norris, Charles L. Carty and James Williams, Plaintiffs,

v.

Tommy ROBINSON, Individually and In His Official Position as Sheriff-Elect of Pulaski County, Arkansas, Defendant.

Herman UEKMAN, John W. Smith, Melvin G. Jones and Joe E. Johnson, Plaintiffs,

v.

Tommy ROBINSON, Individually and In His Official Position as Sheriff-Elect of Pulaski County, Arkansas, Defendant.

Nos. LR–C–80–608 to LR–C–80–610.

United States District Court, E. D. Arkansas, W. D.

Jan. 20, 1981.

Dan J. Kroha and Robert A. Newcomb, Little Rock, Ark., for plaintiffs.

Wallace, Hilburn, Clayton & Calhoon, Ltd., by John R. Clayton and John F. Forster, Jr., North Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HOWARD, District Judge.

On December 29, 1980, three separate lawsuits—LR–C–80–608, LR–C–80–609 and LR–C–80–610—were filed against Tommy Robinson, sheriff-elect of Pulaski County, Arkansas, by twenty-six employees [1] of the

---

1. The following plaintiffs moved for non-suit in LR–C–80–609 and LR–C–80–610: Larry New- kirk, Ronnie Lee Bell, Joan Etheridge, Jim J. Martin, Susan Ann Jones, Albert Hoover, Dan-

Pulaski County Sheriff's Department, seeking a temporary restraining order; a preliminary injunction and a permanent injunction enjoining the defendant from failing to reappoint plaintiffs as employees of the Pulaski County Sheriff's Department on January 1, 1981, the date defendant would be officially sworn in as sheriff of Pulaski County; a declaratory judgment; damages and attorneys' fees. The jurisdictional grounds asserted and relied upon are: 42 U.S.C. §§ 1983, 1985 and 1988; 28 U.S.C. §§ 1343(3)(4), 2201 and 2202.[2]

Plaintiffs alleged that the defendant, in August, 1980, after he became the sheriff-elect, met in conference with the employees of the Pulaski County Sheriff's Department and advised them, including the plaintiffs, that, with the exception of five to ten employees, none of whom were present at the conference, they would be reappointed as deputies on January 1, 1981. In relying upon this statement, plaintiffs anticipated reappointment and three of the plaintiffs, Jim J. Martin, James R. Bump and Rick Wilson, refused offered employment with other law enforcement agencies.

Plaintiffs also alleged, and the evidence revealed, that each received a letter from the defendant on December 10, 1980, stating that plaintiffs would not be reappointed as deputy sheriffs on January 1, 1981, and that each should "submit the proper resignation papers to the current administration in order to receive any vacation time, etc., that might be due you."

Plaintiffs also alleged that they were not informed of the reasons for their termination and were not afforded a hearing, and, consequently, were precluded from refuting any charge or charges of incompetency as a basis for defendant's action, while acting under color of state law, and, accordingly, were denied procedural due process as secured to them under the United States Constitution; and that "as a result of the actions of the defendant, plaintiffs will suffer irreparable harm by loss of professional standing, earnings, salary increases, opportunities for promotion and other benefits."

The three plaintiffs in LR–C–80–608, Rick A. Wilson, Jerrel A. Schultz and Walter Lewis Sayers, Jr., alleged that they had been employed with the Pulaski County Sheriff's Department since April 15, 1977, January 1, 1977, and June 27, 1977, respectively; that they were terminated because of their efforts to unionize the deputies of Pulaski County, Arkansas, and to affiliate the union with the AFL–CIO; and that defendant's conduct deprives the plaintiffs of freedom of speech and association secured under the United States Constitution.

Plaintiffs in LR–C–80–609, alleged that they were terminated solely on the grounds that they supported and campaigned for defendant's political opponent, Ken Best, the incumbent; and that defendant's action denies plaintiffs' First Amendment rights of freedom of speech and association under the Federal Constitution. Plaintiffs, Bump, Newkirk, Perry, Davis, Briley, Biggs, Bell, Lake, Brown, Poe, Etheridge, Norris, Carty and Williams, further alleged that they had been employed in the Pulaski County Sheriff's Department for a period of two years, nine years and nine months, three and one-half years, two years, ten years, four years, four and one-half years, five years, twelve years, fifteen months, eight years, thirteen years, seven years and twenty-seven months, respectively.

The nine plaintiffs in LR–C–80–610 alleged further that the defendant promised that if plaintiffs would withdraw a proposed Civil Service Law for Pulaski County employees, which had been submitted for inclusion on the ballot for the 1980 general election, only five or ten deputies would be terminated and that plaintiffs would be reappointed in 1981; that the Personnel Policy Ordinance of Pulaski County creates a protected interest in continued employment and requires a two week's notice involving the termination of county employees and

---

iel Colclasure and Thomas L. Aloway. Their motions were granted. Plaintiff, Vera A. Davis, submitted her resignation after institution of this action and is now employed by another law enforcement agency.

**2.** The three cases were consolidated for trial.

the further right to a hearing; and that the defendant has failed to advise the plaintiffs of the grounds for termination and afford a hearing to plaintiffs.

Plaintiffs Martin, Uekman, Smith, Susan Ann Jones, Melvin G. Jones, Hoover, Colclasure, Aloway and Johnson, have been employed by the Pulaski County Sheriff's Department for three years, three months, five months, three months, one year, eleven years, six months, four years, and eight years and four months, respectively.

On December 31, 1980, the Court entered a temporary restraining order, after notice to the defendant, conducting a three and one-half hour hearing, and hearing argument of counsel for both sides, enjoining the defendant and his agents from failing to reappoint the plaintiffs as employees of the Pulaski County Sheriff's Office on January 1, 1981, from terminating the employment of the plaintiffs in any way, or from changing the classification of the plaintiffs or demoting them in any way until the cause could be heard at a hearing for a preliminary injunction, on the condition that plaintiffs submit a bond of $1,200.00 to indemnify the defendant for his costs and damages incurred in the event it was determined that the temporary restraining order should not have been entered.[3] The Court found that the threats of termination of plaintiffs' employment was real and imminent; and that such action, if taken by Robinson, would result in irreparable harm

to the plaintiffs unless the Court granted relief; that the harm to the defendant and any inconvenience to the public was outweighed by the threatened harm to the plaintiffs; that the issues raised in the verified complaint and argued before the Court demonstrated a substantial likelihood that plaintiffs would prevail at a trial of the issues.

During pre-trial conference on January 7, 1981, the Court ordered the trial on the merits to be advanced and consolidated with the hearing scheduled for January 8, 1981, on plaintiffs' request for a preliminary injunction. At the request of counsel, the record was left open until January 15, 1981, for any additional evidence acquired during the five day discovery period allotted counsel between the scheduled hearings of January 8th and January 15th. The Court also, on January 8, 1981, in order to maintain the status quo during discovery, extended the temporary restraining order to January 20, 1981.

During the course of the trial, plaintiffs introduced plaintiffs' exhibit 5, Ordinance Number 255, enacted by the Quorum Court of Pulaski County, Arkansas, on August 28, 1979, and entitled "An Ordinance Enacting A Personnel Policy For Employees Of Pulaski County, Arkansas."[4]

Relevant parts of Ordinance Number 255 are:

Section 7.   PROBATION

---

**3.** Unlike the usual termination of employment cases which are filed after termination, this Court was requested to afford relief before termination. The Court was persuaded that the temporary restraining order should be issued since damages would not have been sufficient in light of the potential loss of vested property rights of the plaintiffs in their employment, namely, retirement benefits, vacation and sick leave, employee and dependent life insurance coverage, employee and dependent hospitalization and dental coverage and the permanent status that a Pulaski County employee enjoys after the completion of a probationary period.

Aside from considering the uncertainty and the difficulty in assessing the monetary loss to be incurred by each plaintiff, if relief were denied plaintiffs, the Court was not persuaded that bond required of sheriffs under Arkansas's statutory law provides coverage for claims as-

serted by plaintiffs. *See*: Ark.Stat.Ann. § 17–4206 (Repl.1980).

**4.** The Pulaski County Quorum Court is the legislative branch of the Pulaski County Government. *See*: Ark.Stat.Ann. §§ 17–4001 to 4014 (Repl.1980).

*See: Walker v. County of Washington*, 263 Ark. 317, 564 S.W.2d 513 (1978) where the Arkansas Supreme Court held, in interpreting a companion section, Ark.Stat.Ann. § 17–3802(1)(a) (Supp.1977) (§ 70 of Act 742), Quorum Courts are empowered to enact ordinances requiring all county constitutional offices to be open to serve the public at certain designated hours, as coming within express powers granted Quorum Courts and was not violative of the doctrine of separation of powers. The Court further held that a County Quorum Court may exercise those legislative powers authorized by law.

7.1 Each employee of Pulaski County will be required to serve a minimum three month probationary period except for uniform officers of the Sheriff's Department who will be required to serve a one year probationary period before a permanent status is designated. The purpose of this probationary period is not only to allow the hiring official to observe and evaluate the employees's job performance but also to allow the new employee a reasonable period of adjustment to the new job.

Section 11. TERMINATION

In the event that any full-time employee is involuntarily terminated, for any reason other than a result of disciplinary action, the affected employees shall be given at least two weeks' notice. A copy of the official reason(s) for termination shall be filed with the Personnel Department.

Section 14. DEMOTION

In the event that a supervisor and/or appropriate elected official concludes that an employee is unable to fulfill his duties in his present job, but could possibly perform satisfactorily in a less demanding position (that is open at the time), the employee may then be given the option to either accept the demotion, transfer, or be terminated. Any employee requesting a demotion, for whatever reason, should make the request in writing to his supervisor.

Section 15. TRANSFERS

A transfer of an employee may be made between positions within a department or from a position in another department to elsewhere with the same pay grade, providing funds are available. The Personnel Department will assist in interdepartmental transfers.

Section 16. EMPLOYEE ETHICS AND CONDUCT

.    .    .    .    .

16.2 County employees are encouraged to be active in and informed about politics and to exercise their vote freely at every election. However, to insure impartiality and non-partisan

public service, certain actions which constitute inappropriate political activity will not be allowed.

a. Use of official authority as an employee to benefit any candidate.

b. Solicit funds or disburse campaign material while on duty.

c. Display campaign material on county property or vehicle.

d. Participate in any partisan or nonpartisan activity while on duty.

e. Use County offices or equipment for political purposes.

Section 17. DISCIPLINARY ACTION

.    .    .    .    .

Suspended or terminated employees have the right to appeal the action taken against them as specified in Section 18.

Section 18 of Ordinance Number 255 defines a grievance as "a cause of distress felt to afford reason for complaint or resistance." The provision also creates a grievance board which is composed of one representative elected by the employees from the various county offices or departments, including a representative from the Pulaski County Quorum Court. The Board of Grievance is empowered to review grievances of employees and make recommendations to the hiring official.

The defendant testified that he sought to invoke the administrative procedure outlined in Ordinance Number 255 when he advised plaintiffs by letter dated December 5, 1980, that they would not be reappointed on January 1, 1981. However, defendant further testified that he was not familiar with all of the provisions of the ordinance, including the grievance provisions. It is clear from the evidence that the defendant did not evaluate plaintiffs' qualifications and capabilities in accordance with Section 14 of the ordinance in order to determine whether any or all of the plaintiffs were candidates for interdepartmental transfers or were eligible for less demanding positions within the Sheriff's Department.

Moreover, the defendant admitted that his decision to terminate the plaintiffs was based upon reports received from former employees of the Sheriff's Department, and personal interviews with each plaintiff which, according to the testimony, ranged from one minute to five minutes, and sources other than the official personnel folders of the plaintiffs.

It is plain that the plaintiffs' complaints are based on federal grounds and there are substantial questions raised going to the merits which create a fair ground for litigation. But the Court is persuaded that a resolution of the issues on the merits should be deferred inasmuch as it is clear that the Quorum Court of Pulaski County has structured an administrative procedure for the redress of employment grievances claimed by county employees. It is further apparent that defendant, while intending to do so, did not properly invoke the administrative machinery in his effort to terminate the plaintiffs as county employees.[5]

■ It appears that Ordinance Number 255 makes the Pulaski County Grievance Board the equivalent of an administrative agency with fact-finding duties and the power to make recommendations regarding the termination and discipline of county employees. The only basis for this Court to disregard the administrative procedure of Ordinance Number 255, which has the sanction of state law,[6] is to conclude that it is legally certain that the administrative proceeding would have been futile and used as a subterfuge for denying plaintiffs' vested property rights—an assumption which this Court is unwilling to make. The Court is

persuaded that the administrative procedure under Ordinance Number 255 not only offers job security to Pulaski County employees, including deputy sheriffs, but it affords an administrative machinery that is reasonable, adequate and is capable of resolving the controversy in question. Under these circumstances, a Federal Court should not interfere until the administrative procedure has been exhausted and the intervention of the Court has been shown to be necessary. *Kansas City Southern Ry. Co. v. Great Lakes Carbon*, 462 F.Supp. 21 (E.D. Mo.1978); *Wheelabrator Corporation v. Chafee*, 147 U.S.App.D.C. 238, 455 F.2d 1306 (D.C.C.A.1971); *White, et al v. Walnut Hill Telephone Company, Inc., et al*, 84 F.R.D. 138 (W.D.Ark.1979).

■ It is well settled an employee must exhaust available administrative remedies in job dismissal cases before seeking relief in a federal court. *Gooley v. Conway*, 590 F.2d 744 (8th Cir. 1979); *Norton v. Blaylock*, 285 F.Supp. 659 (W.D.Ark.1968), aff'd 409 F.2d 772 (8th Cir. 1969); *Medical Center of Independence v. Califano*, 433 F.Supp. 837 (W.D.Mo.1977); *White, et al v. Walnut Hill Telephone Company, Inc., et al*, supra.

In summary, the Pulaski County Quorum Court, the legislative arm of Pulaski County, with the sanction of State law, has set up certain rights and remedies for the benefit of employees of Pulaski County. It seems plain, under the ordinance, that before an employee can be terminated, he has a right to have these procedures invoked and his grievance considered by a Board consisting of his fellow employees. Rights

---

**5.** Counsel for plaintiffs have argued that the defendant did not have standing to invoke the administrative procedure when he mailed notices of termination on December 5, 1980, since the defendant was only the sheriff-elect. The Court is of the view that it is not necessary to address this question in order to find that defendant did not invoke the administrative procedure properly since the evidence fails to demonstrate that the defendant advised either the plaintiffs or the Pulaski County Personnel Department of the reasons for terminating plaintiffs. Moreover, *defendant testified that he was not familiar with all of the relevant provi-*

sions of Ordinance Number 255 and, accordingly, it is plain that all relevant administrative provisions of the order were not invoked by defendant.

**6.** *See:* Ark.Stat.Ann. § 17–3805 (Repl.1980), where the Quorum Courts are empowered to enact legislation "with regard to employee policies and practices of a general nature, including, but not limited to, establishment of general vacation and sick leave policies, ... general policies to be applicable in the hiring of county employees."

acquired by Pulaski County employees after a probationary period, three months for non-uniform employees and one year for uniform employees, including employees of the Sheriff's Department, are retirement benefits, vacation and sick leave, employee and dependent life insurance coverage, employee and dependent hospitalization and dental coverage and a permanent status as an employee. It seems beyond debate that these are vested rights. Indeed, Pulaski County's Grievance Board should be afforded the opportunity to review and determine the validity of plaintiffs' grievances.

■ The Court is persuaded that while the plaintiffs and the defendant should be required to exhaust available administrative remedies, this action should be stayed on its docket. In order to maintain the status quo, and finding that damages would be an inappropriate remedy and considering the equities of the plaintiffs, defendant and the public, the Court finds that the defendant should be preliminarily enjoined from terminating the plaintiffs, Rick A. Wilson, Jerrel A. Schultz, Walter Lewis Sayers, Jr., James R. Bump, Charles W. Perry, III, Don Briley, Lewis W. Biggs, Velma D. Lake, Robert E. Lee Brown, John C. Poe, John Norris, Charles L. Carty, James Williams, Herman Uekman, John W. Smith, Melvin G. Jones and Joe E. Johnson, from changing their classification or demoting them in any way until the parties have invoked the administrative provisions under Ordinance Number 255 and the administrative process has been fully pursued and implemented.