James L. WELLS, Sheriff of Marion County, Indiana; John R. Weliever, President of Marion County Sheriff's Merit Board; and Marvin E. Ferguson, Gene E. Sease, and Fred W. Morley, Members of the Marion County Sheriff's Merit Board, Defendants-Appellants,

v.

Bernard J. AUBERRY, Plaintiff-Appellee.

No. 1–581A182.

Court of Appeals of Indiana, First District.

Jan. 11, 1982.

Rehearing Denied Feb. 19, 1982.

Joseph W. Hammes, John H. Stanley, Indianapolis, for defendants-appellants.

R. Scott Hayes, Scotten & Hinshaw, New Castle, A. David Stippler, Byrum, Gagnon, Diehl & Stippler, Indianapolis, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF CASE

James L. Wells, Sheriff of Marion County, (Wells) and members of the Marion County Sheriff's Merit Board (Board) bring this interlocutory appeal of the trial court's order granting preliminary injunctive relief which restored Bernard J. Auberry (Auberry) to his former rank pending resolution of his complaint against Wells and the Board. We reverse.

## FACTS

On March 11, 1975, Auberry was appointed to serve civil process by Sheriff Broderick, Marion County Sheriff at that time. On January 16, 1976, Auberry was transferred to the security detachment at Eagle Creek Park and promoted to the rank of Lieutenant. He was subsequently promoted to Captain on May 22, 1976, and to Major only four months later. Auberry supervised about fifteen employees at Eagle Creek Park. On June 13, 1980, Sheriff Wells orally demoted Auberry to Sergeant allegedly because of a morale problem among park employees. Auberry felt that the reason for his demotion was purely political: he had devoted extensive time to working for one Democratic gubernatorial nominee, while Sheriff Wells supported another. Auberry admitted, however, that he was a patronage employee, serving at the will and pleasure of the Sheriff. According to his own testimony Auberry has never applied for a merit position with the Marion County Sheriff's Department and has neither appeared before the Merit Board nor requested a hearing of any type before it. Auberry also testified that he has never made a contribution and that a deduction has never been taken from his pay check for the Marion County Sheriff's pension fund. However, on July 7, 1980, Auberry filed an action seeking injunctive and declaratory relief together with damages as a result of his demotion without written notice and a hearing before the Board. He requested preliminary relief of reinstatement to the rank of Major claiming protection under § 501 of the Rules and Regulations of the Marion County Sheriff's Department and under the merit law, Ind. Code 17–3–14–1 *et seq.* As set forth in the Record at 362(35), § 501 of those Rules and Regulations states:

> "*501. Violation of Rules and Regulations*: Each member of the Marion County Sheriff's Department shall be subject to suspension, reduction in rank, or dismissal from the Sheriff's Department, according to the nature of the offense, for violation of Rules and Regulations appearing in this Manual. The Sheriff shall

have authority to prescribe penalties as provided by: Indiana Code I.C. 71, 17–3–14–7."

Indiana Code 17–3–14–7, referred to in § 501, provides:

> "17–3–14–7. County police force; discharges, demotions, or temporary suspensions; hearings Sec. 7 The sheriff may discharge, demote, or temporarily suspend any county policeman, for cause, after preferring charges in writing and after a fair public hearing before the board, reviewable in the circuit court, a notice of which charges and hearing shall be delivered by certified mail to the county policeman to be discharged, demoted or temporarily suspended. Such county policeman may be represented by counsel. The sheriff may temporarily suspend without a hearing before the board, any county policeman, after preferring charges of misconduct in writing delivered to such county policeman, for a period not to exceed fifteen (15) days.

> "No county policeman shall be discharged, demoted, or temporarily suspended because of political affiliation, nor shall any county policeman be discharged, demoted, or temporarily suspended after his probationary period, except as provided in this act.

> "For the purpose of hearings provided in this act, the board shall have subpoena powers enforcible by the circuit court. Probationers may be discharged by the sheriff without right to hearing. (Formerly: Acts 1961, c. 285, s. 6)."

After extensive legal peregrinations the Henry County Circuit Court heard evidence on Auberry's request for the preliminary injunction on February 26, 1981. After entering extensive findings of fact and conclusions of law which it supplemented on May 8, 1981, the court granted the requested relief reinstating Auberry to the rank of Major pending full resolution of his complaint.

## ISSUES

"I. Whether the trial court erred in granting preliminary injunctive relief contrary to the law.

"II. Whether the trial court erred in making findings of fact and conclusions of law beyond the scope of the issues and the evidence presented, contrary to Trial Rule 52(A) and (B).

"III. Whether the trial court erred in applying the standards for discipline as found in I.C. 17–3–14–1 *et seq.* to a 'civil' deputy sheriff appointed under I.C. 17–3–5–4.

"IV. Whether the trial court erred in applying the rules and rregulations [sic] of the Marion County Sheriff's merit board to a 'non-merit civil' deputy.

"V. Whether the trial court erred in finding that a property right exists in the employment of a 'non-merit civil' deputy sheriff, in effect, creating judicially, a merit system for such employees.

"VI. Whether the trial court erred in finding that the same procedures set forth in both statute and regulation must be followed to legally discipline a 'non-merit civil' deputy sheriff, an employee, at will."

## DISCUSSION AND DECISION

Because we have decided that the granting of a preliminary injunction in this cause was contrary to law, we limit our discussion to that single issue.

It is true that a grant or denial of a preliminary injunction rests within the equitable discretion of the trial court. *Elder v. City of Jeffersonville,* (1975) 164 Ind. App. 422, 329 N.E.2d 654, *trans. denied.* In determining whether or not the trial court abused that discretion we do not weigh conflicting evidence, but consider only that evidence which supports the trial court's findings, conclusions, and order. *Rees v. Panhandle Pipeline Co.,* (1978) Ind.App., 377 N.E.2d 640; *Peters v. Davidson, Inc.,* (1977) 172 Ind.App. 39, 359 N.E.2d 556, *trans. denied.* The trial court's order will not be disturbed unless it is clearly erroneous, *Rees v. Panhandle Pipeline, supra,* or "is the re-

sult of an improvident exercise of judicial discretion." 7–Pt.2 Moore's Federal Practice ¶ 65.04[1] at 65–36 (1980). Nevertheless, "[w]hile an application for preliminary injunction is addressed to the Court's discretion, the power to issue such an interlocutory injunction should be used sparingly and such relief should not be granted except in rare instances in which the law and facts are clearly in the moving parties' favor." *Indiana State Employees Association, Inc. v. Negley,* (S.D.Ind.1973) 357 F.Supp. 38, 40. *See also,* 7–Pt.2 Moore's Federal Practice, *supra.* Injunctive relief has been referred to as "the strong arm of the court," *Laughlin v. Lamasco City,* (1855) 6 Ind. 223, 228, and Indiana courts have long required that "[o]ne who seeks injunctive relief should show very clearly that he is entitled to it." *Hurd v. Walters,* (1874) 48 Ind. 148, 150, cited in *Craig v. School City of Gary,* (1965) 138 Ind.App. 261, 211 N.E.2d 616, *trans. denied* (1966).

Auberry contends that the trial court properly granted injunctive relief in his favor because he established a *prima facie* case on his principal claim that it is contrary to the equal protection provisions of both the Indiana and the Federal Constitutions to deny him and his class merit employee status and because he would suffer irreparable harm if the relief were not granted. Sheriff Wells and the Board, on the other hand, disagree, arguing that the trial court's order was contrary to law because Auberry failed to establish any of the elements necessary to sustain a complaint for injuctive relief. Both parties agree that there are four elements which must be shown by a petitioner seeking injunctive relief: (1) that petitioner will post sufficient security to cover the costs and damages which the opposing party may suffer if he or she is wrongfully enjoined; (2) that public interest will not be harmed in balancing the hardships to the parties if an injunction is granted; and (3) that petitioner will suffer irreparable harm if the relief is not granted. About the fourth, and in essence, threshold requirement, however, the parties disagree. Auberry asserts that a *prima fa-*

*cie* case on the merits is all that he need show, citing *Rees v. Panhandle Pipeline, supra.* Wells and the Board contend that a more stringent standard is applied when injunctive relief is sought against a public entity, citing *Craig v. School City of Gary, supra,* and that the test becomes one of establishing clearly the probability that petitioner will prevail on the merits, citing, *Indiana State Employees v. Negley, supra.*

 Cases which examine the factors a court must consider in awarding or denying injunctive relief are, quite naturally, distinguishable by the facts and circumstances unique to each case. Nevertheless, certain general patterns emerge from an overall study and grouping of case law dealing with injunctive relief. One design which is evident suggests that where there is a great danger of irreparable harm to the petitioner or the public, there is less of a need to go beyond the establishment of a *prima facie* case on the merits. *See, e.g., Rees v. Panhandle Pipeline, supra; Mid-America Marketing, Inc. v. Falender Development Corp.,* (1980) Ind.App., 406 N.E.2d 372. Conversely, as the imminence of irreparable harm is reduced, the *prima facie* case requirement expands to the test of probability of recovery on the merits. *See, e.g., Indiana State Employees v. Negley, supra.* It becomes clear, therefore, that our focus should be directed to the nature of the harm allegedly suffered by Auberry and found by the court to be irreparable.

 That this element should provide the focus for the court's attention initially upon a complaint for injunctive relief is not surprising when one considers the purpose of a preliminary injunction. All of the authority we have found and which the parties herein cite agree that the object of this injunction is to maintain the *status quo* pending adjudication of the underlying claim. The necessity of maintaining the *status quo* is to prevent harm to the moving party which could not be corrected by a final judgment. If irreparable injury were to occur during the course of litigation, the judgment, in effect, would be rendered meaningless. Thus, it has been held that an injunction will not be granted where the law can provide a full, adequate, and complete method of redress. *Indiana & Michigan Electric Co. v. Southern Wells School Building Corp.,* (1972) 258 Ind. 75, 279 N.E.2d 228. It would appear that only harm which a court cannot remedy following a final determination on the merits may be deemed to constitute irreparable injury warranting issuance of a preliminary injunction. *American Hospital Association v. Harris,* (7th Cir. 1980) 625 F.2d 1328. Likewise, courts have held that where reinstatement coupled with back pay will redress an alleged wrong, the harm suffered is not irreparable and a preliminary injunction is inappropriate. *Indiana State Employees v. Negley, supra; Van Arsdel v. Texas A & M University,* (5th Cir. 1980) 628 F.2d 344.

 A second design apparent from the cases reflects the unusual impact which the public interest element imparts to a case. As explained by our supreme court:

"But where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff. *Virginian R. Co. v. United States,* 272 U.S. 658, 672, 673, 47 S.Ct. 222, 228, 71 L.Ed. 463; *Petroleum Exploration v. Public Service Commission,* 304 U.S. 209, 222, 223, 58 S.Ct. 834, 841, 842, 82 L.Ed. 1294; *Dryfoos v. Edwards,* D.C., 284 F. 596, 603, affirmed 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; see *Beaumont, S. L. & W. R. Co. v. United States,* 282 U.S. 74, 91, 92, 51 S.Ct. 1, 7, 8, 75 L.Ed. 221. *Compare State of Wisconsin v. State of Illinois,* 278 U.S. 367, 418–421, 49 S.Ct. 163, 171–173, 73 L.Ed. 426. This is but another application of the principle, declared in *Virginian R. Co. v. System Federation,* 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789, that 'Courts of equity may, and frequently do, go much further both to give and withhold relief in furtherance of the public interest than they

are accustomed to go when only private interests are involved.'"

*Yakus v. United States,* (1944) 321 U.S. 414, 440–41, 64 S.Ct. 660, 675, 88 L.Ed. 834. In cases where the public interest may be adversely affected courts are and, as pointed out in *Yakus,* should be much more reluctant to grant preliminary mandatory relief than if only private interests are involved. Cases concerning employment rights of police and firemen are frequently found by the courts to involve a readily identifiable public interest, and this heightened consideration given to the public interest will lead courts to discount what other government employees have come to regard as constitutionally protected due process rights. *See, e.g., State ex rel. Barge v. Hatcher,* (1973) 158 Ind.App. 515, 303 N.E.2d 280, *trans. denied* (1974); *State ex rel. Todd v. Hatcher,* (1973) 158 Ind.App. 144, 301 N.E.2d 766, *trans. denied* (1974). Similar employment rights cases where a finding of a violation of first amendment rights is made, however, clearly will permit a conclusion of irreparable harm entitling a petitioner to injunctive relief. *See, e.g., Burns v. Elrod,* (1976) 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547; *Wilson v. Robinson,* (E.D.Ark. 1981) 506 F.Supp. 1236; *Morris v. City of Kokomo,* (1978) Ind.App., 381 N.E.2d 510. Such a finding was not made in this case.

■ Here the court concluded that Auberry had suffered irreparable harm as a result of Wells' and the Board's failure to provide him with written notice of his demotion and a hearing before the Board. However, the court's only findings of fact which support this conclusion are those of loss of a salary differential between the ranks of Major and that of Sergeant and of inadequate administrative remedies. As pointed out above, mere economic injury will not warrant the granting of a preliminary injunction. Moreover, the fact that an administrative remedy may be inadequate does not lead automatically to the conclusion that the legal remedy is inadequate. Furthermore, the relief which the court rendered preliminarily, *i.e.,* reinstatement in rank and an award of back pay, may be just as effectively rendered after a determination is made on the merits as it would be if made preliminarily. We find, therefore, that the trial court improperly exercised its discretion in awarding injunctive relief to Auberry prior to a determination of his claim on the merits.

Judgment reversed.

NEAL and ROBERTSON, JJ., concur.