PORTER MEMORIAL HOSPITAL, the Board of Trustees of Porter Memorial Hospital, and Arthur S. Malasto (Appealing Defendants); Sharon Simon, Associated Physicians, Inc., Martin J. O'Neill, M.D., and Clark M. McClure, M.D. (Non-Appealing Defendants), Defendants-Appellants,

v.

Thaddeus J. MALAK, M.D., Individually and as a Taxpayer and Resident of Porter County, Indiana, on behalf of himself and all others similarly situated, Plaintiff-Appellee.

No. 3–384A68.

Court of Appeals of Indiana,
Third District.

Oct. 23, 1985.

Jon F. Schmoll, Robin D. Pierce, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for defendants-appellants.

Delmar P. Kuchaes, Chudom & Meyer, Schererville, for plaintiff-appellee.

GARRARD, Judge.

This is an interlocutory appeal from the granting of a temporary injunction which ordered the hospital to restore Dr. Malak's staff privileges until such time as they might be terminated in compliance with the hospital's bylaws.

From 1978 to 1983 the doctor was employed by Associated Physicians, Inc., and was a member of the hospital's medical staff. In the summer of 1983 trouble developed between the parties. The relationship between the doctor and Associated Physicians, Inc. was ended, and litigation ensued. Then, on October 15, the doctor received a memo from the hospital telling him that he would no longer be allowed to treat patients there.

An amended complaint was filed in the litigation already in progress and in due course, a hearing was held on the doctor's prayer for a preliminary injunction. After considering the evidence, the trial court entered findings of fact, conclusions of law and a preliminary injunctive decree, the provisions of which were as follows:

## "FINDINGS OF FACT
\* \* \* \* \* \*

6. Porter Memorial Hospital operated under Medical Staff Bylaws, Rules and Regulations, Policies and Procedures. Plaintiff's Exhibit 1 and Defendant Porter Memorial Hospital's Exhibit 10.

\* \* \* \* \* \*

15. Said hospital staff bylaws provide for yearly reappointment. Article III, Section 6, 'Reappointment to the medical staff will be made by the Board of Trustees each year upon recommendation of the Executive Committee of the medical staff. The procedure for reappointment will be as follows:

'A. All members of the medical staff who do not indicate otherwise shall be considered for reappointment to the same category of the staff with the same clinical privileges they then hold. Each year on September 1, the Credentials and Professional Standard Com-

mittee shall submit a list of active staff members their respective committees for the purpose of evaluation for reappointment. It will be the responsibility of each departmental committee to evaluate the performance of each physician who falls within their particular area of service. The departmental committee will complete an evaluation form on each physician who has been assigned to that service and will evaluate the physician for purposes of reappointment and may consider the following criteria: ....'

16. Said bylaws provide that the procedure will be automatic; however, as a practical matter the hospital each year gave to the doctors a new application which the doctors completed and resubmitted.

\* \* \* \* \* \*

22. Following the termination of his contract, Dr. Malak, as a private physician, continued to treat patients in the emergency room of the Porter Memorial Hospital.

23. By a letter dated October 15, 1983, Arthur S. Malasto notified Dr. Malak that he could no longer use the hospital or treat or admit patients therein. Plaintiff's Exhibit 4.

24. Said bylaws, Article III, Section 8, provides the 'Procedure for Corrective Action, Automatic and Summary Suspension, and Leave of Absence,'

25. Said bylaws, Article III, Section 9.03 provides the procedure for notification of the affected person.

'Whenever a decision has been made which entitles a person to a probable cause or evidentiary hearing the person shall be notified in writing of the decision by the chairman of the Credentials and Professional Standards Committee and of the person's right to a hearing before the decision becomes final.'

26. Article III, Section 9.02(b) provides the following decision shall entitle the medical staff member to an evidentiary hearing before the Executive Committee with the right of appeal on the record to the Board of Trustees of the Hospital whose decision shall be final. Section 9.02(b)(4), Revocation of Medical Staff Membership.

27. Dr. Malak received no notice from the chairman of the Credentials and Professional Standards Committee of any investigation, problem, or decision, nor that he was entitled to a hearing.

\* \* \* \* \* \*

## CONCLUSIONS OF LAW

\* \* \* \* \* \*

1. Dr. Malak held, from Porter Memorial Hospital, an 'active staff' membership with privileges in the Emergency Department.

2. Under the 1981 Bylaws of said hospital there is a distinct division between 'active staff' and 'emergency room staff' positions.

3. Dr. Malak was not required by said bylaws to request reappointment yearly.

4. The hospital administrator has no authority to suspend a doctor under said bylaws.

5. Dr. Malak was not suspended pursuant to any of the 1981 Bylaws. Defendant's Exhibit 10.

6. Dr. Malak was given no notice of suspension containing notice of appeal.

7. The hospital must abide by its own bylaws.

8. Dr. Malak has been illegally prohibited by Porter Memorial Hospital from exercising his staff privileges.

9. Dr. Malak has no adequate remedy at law.

\* \* \* \* \* \*

## "INJUNCTIVE DECREE

"... [T]he Court finds that plaintiff is entitled to be restored by defendant Porter Memorial Hospital to his staff privileges until legally removed.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court that defendant Porter Memorial Hospital is hereby ordered to restore Dr. Thaddeus J. Malak, M.D., to the privileges he

held on October 15, 1983, to-wit: active staff membership.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendant Porter Memorial Hospital is further enjoined from prohibiting Dr. Thaddeus J. Malak from using said hospital until and unless he is legally removed from said staff."

To this order the hospital has filed eighty-five assignments of error. The assigned errors fall into six major classes:

1. That the 1978 and 1981 bylaws did not control the rights and duties of the parties on October 15, 1983. Thus, since the 1983 bylaws were not in evidence, there was no proof as to what the rights and duties of the parties were.

2. That since there was undisputed testimony that the 1981 bylaws had been amended, and no testimony as to the contents of such amendments, the court could not base its decision on the 1981 bylaws.

3. Since the doctor had not submitted an application for 1984 it was incorrect to order that he be given staff privileges in that year.

4. That ordering staff privileges in 1984 invaded the authority of the hospital's board of trustees.

5. That the injunction was incorrect since the doctor failed to exhaust his administrative remedies by failing to apply.

6. That there was no showing that the doctor's remedy at law was inadequate.

In its proper turn, and without regard to whether there was any logical connection between the assigned defect and the reason it was supposed to be wrong,[1] each of these classes of error was alleged to make the preliminary injunction:

A. Clearly erroneous;

B. An abuse of discretion;

C. Contrary to the law;

D. Contrary to the evidence;

E. Supported by insufficient evidence.

The standard of review for preliminary injunctions was set out in some detail by the Court of Appeals last year:

"We initially note that the grant or denial of a preliminary injunction rests within the sound equitable discretion of the trial court. This court will not interfere with the exercise of that discretion unless it is shown that the trial court's action was arbitrary or constituted a clear abuse of discretion. The discretion to grant or deny preliminary injunctive relief is measured by several factors, including whether the plaintiff's remedies at law are inadequate thus causing irreparable harm pending resolution of the substantive action if the injunction does not issue, whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case, whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction would occasion upon the defendant, and whether by the grant of a preliminary injunction the public interest would be served."

*Steenhoven v. College Life Ins. Co. of America* (1984), Ind.App., 458 N.E.2d 661, 664 [citations and footnotes omitted].

A judgment is not clearly erroneous if the record discloses facts or inferences from facts which support the decision. *Lafayette Realty Corp. v. Vonnegut's Inc.* (1984), Ind.App., 458 N.E.2d 689, 692; *Kimbrell v. City of Lafayette* (1983), Ind.App., 454 N.E.2d 73, 74.

I.

Many of the hospital's allegations of error hinge on the trial judge's right to rely on the 1981 hospital bylaws in making its decision.

The hospital argues that there was no evidence to support the conclusion that the hospital acted wrongfully or illegally in prohibiting the doctor from admitting or

---

1. *E.g.,* the hospital claims that the injunctive decree is not supported by sufficient evidence since the court allegedly usurped the authority of the board of trustees. *See* Assignment of Error 69(e).

treating patients at the hospital. More specifically, the hospital urges that since findings of fact and the conclusions of law were based on copies of the 1978 and 1981 hospital bylaws, granting the injunction was clearly erroneous, an abuse of discretion, contrary to the law, contrary to the evidence and not supported by sufficient evidence.

In its brief, the hospital argues that its bylaws control the relationship between the parties and so the exact content of the bylaws on October 15, 1983[2] had to be proved in order for the injunction to stand.

Copies of the bylaws were placed into evidence both by the doctor, whose exhibit was the 1978 version, and the hospital, which entered into evidence the bylaws as they existed on May 13, 1981.

There has been no allegation that this evidence was inadmissible. Given that the hospital was one of the parties that brought forth the bylaws, it does not lie with it to object to their admissibility. When something has been entered into evidence without objection, "... it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have." McCormick, Evidence Section 54 (Cleary ed. 1984).

Once there has been competent proof that a state of facts exists, a court may infer that such a state continues for a reasonable period of time. *Pittsburgh, C., C. & St. L. Ry. Co. v. Macy* (1915), 59 Ind.App. 125, 107 N.E. 486; *Cochran v. Ward* (1892), 5 Ind.App. 89, 29 N.E. 795; 2 Wigmore, *Evidence* Section 437 (Chadbourn rev.1979); 9 Wigmore, *Evidence* Section 2530 (Chadbourn rev.1981).

Given that Porter Memorial's bylaws control the administration of the hospital, it is not unreasonable to infer that any specific portion would continue in effect for several years.

■ While there was evidence that the bylaws had been amended between 1981, when the most recent of those in evidence were adopted, and 1983, when the events occurred that gave rise to the litigation, the record is devoid of evidence as to the nature of these changes. The new bylaws were available to the hospital. From a party's non-production of available evidence, it can be inferred that the evidence would have been unfavorable to that party. *Morris v. Buchanan* (1942), 220 Ind. 510, 44 N.E.2d 166; 2 Wigmore, *Evidence* Section 285 (Chadbourn rev.1979).

■ The hospital correctly points out that the "burden of proof" was on the doctor. From this it contends that he needed to show the exact content of the bylaws at the time his staff membership was terminated. While this is correct as a generalization, it ignores the state of the evidentiary record in this case.

The term "burden of proof" is not a precise one, for it combines at least two meanings. First, it can be used to mean the burden of persuasion. In seeking a preliminary injunction, the doctor carried this burden. Second, the term can be used to mean the burden of production. The duty to bring forth evidence is a burden which can shift during the course of a trial. The burden of production is said to shift when the party who initially has the burden brings forth enough evidence that a reasonable trier of fact could find in that party's favor. *See* McCormick, *supra,* Section 338 (Cleary ed. 1984); 9 Wigmore, *Evidence* Sections 2485–89 (Chadbourn rev.1981).

In the case at bar, the 1981 bylaws constitute evidence in the record from which the trier of fact could decide in the doctor's favor. Since a prima facie case was made out that the hospital had wrongfully terminated the doctor's staff privileges, the hospital ran the risk of an adverse ruling if it chose not to present evidence that different bylaws controlled the rights and duties of

---

**2.** At five different places in its brief, the hospital referred instead to October 15, 1984, a date irrelevant to the litigation. *See* Assignments of Error 1(a), 18(a), 34(a), 51(a), and 69(a). We have taken the liberty of substituting what we believe to be the proper date wherever the reference to October 1984 occurs.

the parties. It chose not to present such evidence and an adverse decision was rendered.

■ This court will not reweigh the evidence. Instead, it is our function to determine if there are facts and inferences from facts in the record to support the findings of fact made by the trial court. *Lafayette Realty Corp. v. Vonnegut's Inc.* (1984), Ind.App., 458 N.E.2d 689, 692; *Kimbrell v. City of Lafayette* (1983), Ind.App., 454 N.E.2d 73, 74.

In this case, we cannot say that it was clearly erroneous for the court to base its decision on bylaws only two years old.

## II.

Several of the errors alleged to have been committed by the trial court concern the propriety of an order granting the doctor's staff privileges, when he had not gone through the hospital's reappointment process for the year in which the privileges were restored.

## A.

■ Did the trial court err in ordering restoration of staff privileges in 1984 when the doctor submitted no "application" for that year?

The term "application" was frequently used by the parties in their briefs, and was a cause of much confusion in this case. Before discussing the hospital's contention that the doctor has waived any rights to staff membership that he might have by failing to "apply" for membership in 1984, it would be helpful to understand exactly what is meant by that term.

When a person "applies" for a job, he does two things. First, he informs the other party that he is interested in a position. Second, he provides information to the other party so that it can make a rational choice as to whom to hire.

As discussed in Section I above, the trial court was justified in relying on the 1981 bylaws in determining the rights and duties of the parties. While the doctor's oral testimony that applications were required

3. *See* pages 55 and 56.

yearly supports the hospital's contention that physicians were not automatically reconsidered for staff membership, it is not dispositive. The trial judge could easily conclude that the best evidence of the hospital's procedural requirements were by the bylaws.

These bylaws stated that unless a staff member indicated otherwise, he would be automatically considered in the renewal process. Bylaws, Article III, Section 6; Finding of Fact 15, Conclusion of Law 3. Therefore, the doctor did not need to submit anything to fulfill the first function of an application.

These same bylaws give the hospital the right to consider many different types of information in making its decision on privilege renewal. Bylaws, Article III, Section 6. However, the undisputed testimony of the hospital's own witnesses was that its administrative staff was responsible for sending out the "applications" by which such information was collected. Record at 633. It was further undisputed that the "application" which was given to the doctor was not the form used to provide data concerning reappointment, but was the type of form used by those applying for staff privileges for the first time. Record at 645. Since the hospital by its own acts prevented the doctor from submitting the proper forms to prove his continuing eligibility, and since it has not raised any challenge to his qualifications, the trial court could have properly determined that the hospital should fail in its argument that the doctor has failed to prove his entitlement to membership.

As a result of this wrongful conduct by the hospital, the doctor continued to suffer injury at the time the injunction was entered. *Compare O'Shea v. Littleton* (1974), 414 U.S. 488, 94 Sup.Ct. 669, 38 L.Ed.2d 674. The issuance of the injunction was not an abuse of discretion.

## B.

Did the trial court err in its Findings of Fact Number 15 and 16, and its Conclusion of Law Number 3? [3]

The hospital interprets these findings and the conclusions based on them to mean that the trial court concluded that physicians are automatically reappointed to staff privileges. This, it argues, is clearly erroneous, an abuse of discretion, contrary to law, contrary to the evidence, and not supported by sufficient evidence.

Were we to agree with its interpretation of the trial court determinations, we might well agree that reversible error was committed. However, a fair reading of the findings discloses that the court concluded that current staff members were to be reconsidered, rather than reappointed, automatically. Based on what has already been said, these conclusions did not constitute reversible error.

### C.

■ Did the doctor fail to exhaust his administrative remedies?

The hospital argues that the evidence shows that by not submitting an "application" for 1984, the doctor failed to exhaust his administrative remedies. The hospital contends that this makes the trial court's decision clearly erroneous, an abuse of discretion, contrary to the law, contrary to the evidence and not supported by sufficient evidence.

We must first consider whether the doctrine is even applicable.

An examination of the cases in the field shows that this doctrine, and that of ripeness for judicial review, addresses the power of a court to hear a given case, that is to say its jurisdiction. *See, e.g., Yarnell v. Sisters of St. Francis Health Service* (1983), Ind.App., 446 N.E.2d 359; *Indiana State Dept. of Welfare v. Stagner* (1980), Ind.App., 410 N.E.2d 1348. Summarized,

they "... determine at what stage a party may secure review of administrative action." 1 I.L.E. *Administrative Law and Procedure* Section 12.

Here the trial court found against the hospital upon the factual predicate necessary to its exhaustion of remedies argument. The court found that the bylaws did not require reapplication and that the custom, or practice, of reapplying was triggered by the hospital furnishing to the doctor the forms which were to be completed. The evidence supports those findings. Thus, since the hospital precluded the doctor from filing by denying him the necessary forms, the court could properly conclude that he had not failed to exhaust his administrative remedies. Indeed, the hospital's own failure to provide the remedies of notice and hearing are the crux of this phase of the litigation.

### D.

■ Did the trial court unlawfully usurp the statutory authority of the hospital's board of trustees?

It is further contended that by issuing its injunction, the trial court invaded the statutory authority of the hospital's board of trustees. IC 16–12.1–3–1 [4] provides that:

"The board is the supreme authority in the hospital, responsible for the management and control of the hospital, for all functions of the hospital, for the appointment and delineation of privileges of the members of the medical staff, with the advice and recommendations of the medical staff...."

To the extent that this is not simply a repetition of the earlier contention that the trial court could not use reinstatement as a remedy, it would seem that the hospital

---

4. Now IC 16–12.1–3–1(d).

"(d) The board has the authority to appoint and specify the privileges of the medical staff, with the advice and recommendations of the medical staff in accordance with IC 16–12.1–5. The medical staff is responsible to the board for the clinical and scientific work of the

hospital, and it shall be called upon to advise the board regarding professional problems and policies."

We do not believe the changes to be material. While the trial court made no express finding and the parties argue no special significance attended thereto, it appears from the record that the hospital is a county hospital.

would have us read this section to insulate its wrongful acts from judicial review. No such radical meaning is implicit in this code provision. Instead it provides for the smooth governing of the hospital by designating where the authority for making certain kinds of decisions will lie. In this sense it is similar to IC 23–1–2–11(a) and IC 23–7–1.1–10(a) which identify the board of directors as the primary decision making body in a corporation.

Of more significance is a subsequent section of the same statute, IC 16–12.1–3–7 which provides: [5]

> "The board, as the supreme authority in the hospital, shall have the power to determine appointments to the medical staff and delineate privileges of the members of the medical staff *in accordance with* IC 16–12.1–5–1 and *the medical staff bylaws* and rules and regulations approved by it." (our emphasis)

We read this section as imposing upon the hospital a duty to follow its own bylaws in the matter of staff appointments and the delineation of staff privileges.

Had the hospital complied with its own custom by issuing the doctor an "application," and its bylaws by considering his privileges for renewal, no question would arise that the board and the medical staff were acting beyond their statutory authority. However, Indiana decisions make clear that even a private hospital's bylaws may constitute a contract between the hospital and physicians admitted to staff and where, as here, it is admitted that the bylaws are intended to be binding on both parties, a physician is entitled to limited judicial review to ensure that the hospital complied with its own procedures, *Terre Haute Regional Hospital v. El-Issa* (1984), Ind.App., 470 N.E.2d 1371; *Kiracofe v. Reid Mem. Hosp.* (1984), Ind.App., 461 N.E.2d 1134; *Yarnell v. Sisters of St. Francis Health Service* (1983), Ind.App.,

446 N.E.2d 359. Here, the evidence showed that the hospital failed to follow the procedures outlined in its bylaws for notice and hearing before termination of privileges. In so acting, it failed to comply with IC 16–12.1–3–7 and the doctor was entitled to judicial review.

The hospital also contends that the findings of fact made by the trial court and the evidence in the record fail to support Judge McLaughlin's conclusion that the doctor's legal remedy was inadequate.

The doctor argues that in this state it is not necessary to show that the remedy at law is inadequate, but only that without the injunction "... great injury to the plaintiff" will occur. IC 34–1–10–2.

We believe that the doctor is incorrect. While on its face the code section cited does not require a showing that the legal remedy is inadequate, Indiana courts have, for a century, read the statute to require the classic prerequisite to equitable relief, legal inadequacy. *See, e.g., Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679; *Meyer v. Town of Boonville* (1904), 162 Ind. 165, 70 N.E. 146, where the courts discussed this requirement.

We therefore conclude that Indiana law requires both a showing that without the injunction plaintiff will suffer great injury and proof that the remedy at law is inadequate, before a preliminary injunction should be issued.

### E.

Do the findings of fact made by the trial court require reversal?

The general rule in this state is that "Where special findings of fact are made by the trial court, they must be sufficient to disclose a valid basis for the legal result reached in the judgment." *Town of Rome City v. King* (1983), Ind.App., 450 N.E.2d

---

5. Since amended by P.L. 97–1984, Sec. 4. The amendment makes clear that the section applies to "reappointments" as well as "appointments." IC 16–12.1–5–1, referred to, further provides for bylaws and "[s]uch bylaws shall provide for a hearing for a physician whose medical staff membership the medical staff has recommended for termination." The 1984 amendment also incorporated by reference the provision of IC 16–10–1–6.5 concerning staff privileges.

72 at 77. Further, this court "... may not add to the findings by way of presumption or inference." *King, supra.*

Here, none of the findings of fact specifically deal with the damage that the doctor would sustain. It does not appear from the findings what irreparable injury the trial court thought the doctor would suffer. However, nowhere in its assignment of errors did the hospital specifically challenge the findings as inadequate to establish irreparable injury. This technical deficiency in the findings themselves has, therefore, been waived. *Greenbrier Hills v. Boes* (1985), Ind.App., 473 N.E.2d 1040.

Therefore, we shall ignore the technical deficiency and proceed to determine whether the evidence was sufficient to establish the necessary injury and, thus, sustain the court's conclusion. *Dillon v. State* (1985), Ind.App., 482 N.E.2d 747.

A legal remedy is not adequate merely because it exists as an alternative to an equitable form of relief. *Steggles v. National Discount Corp.* (1949), 326 Mich. 44, 39 N.W.2d 237, 15 A.L.R.2d 208. Instead, injunctive relief will be granted if it is more practicable, efficient or adequate than that afforded by law. *Unishops, Inc. v. May's Family Centers, Inc.* (1980), Ind. App., 399 N.E.2d 760.

Testimony at the hearing clearly established that the doctor's training had specially prepared him to deal with the type of medical difficulties that were likely to arise in an emergency room setting. For example, he had special training in the field, was a member of the American College of Emergency Physicians, and since 1978 had practiced primarily in the area of emergency medicine. Since 1978 he had been employed by Associated Physicians, Inc. After he left their employ in 1983, the doctor was only able to practice his specialty as an independent emergency room physician for brief periods of time. From this the court might infer that it would be difficult to calculate the extent of the damages that he had suffered, and thus the legal remedy would be inadequate. *See, e.g., American Mut. Liab. Ins. Co. v. Fisher* (1973), 58 Wis.2d 299, 206 N.W.2d 152.

Such difficulties in the calculation of damages make the doctor's situation far different from that of the salaried and contract employees who sought relief in *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679 and *Indiana Pacers L.P. v. Leonard* (1982), Ind.App., 436 N.E.2d 315. Further, while the case at bar is similar to that before the Seventh Circuit in *Dos Santos v. Columbus Cabrini Med. Center* (7th Cir. 1982), 684 F.2d 1346, there are material differences. In *Dos Santos,* a physician who was prevented by a hospital from exercising her staff privileges sought reinstatement by way of a preliminary injunction in an anti-trust proceeding. This injunction was reversed by the Court of Appeals. However, it is obvious that the awesome breadth of the order made it unnecessary for that court to decide if certain injuries complained of were irreparable, because even if they were, they would "... not support the preliminary injunction issued by the district court." *Dos Santos* at 1350.

It is therefore apparent that since the doctor might have difficulty in establishing the true extent and value of his damages, the trial court could correctly determine that his remedy at law was inadequate.

We further note in passing that preliminary mandatory injunctions are not granted as a matter of course, and in fact should be used only when "... the law and facts are clearly in the moving parties' favor." *Wells, supra* at 682, quoting *Indiana State Employees Assoc., Inc. v. Negley* (S.D.Ind.1981), 357 F.Supp. 38, 40. However, when a court finds a mandatory injunction necessary to preserve the last undisputed position of the parties, granting it will prevent serious harm to the plaintiff and will cause no great harm to the defendant, the courts will grant it. *Steggles, supra.*

The hospital has failed to show prejudicial error. The trial court is affirmed in all things.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.