FAMILY AND SOCIAL SERVICES AD-
MINISTRATION and The Indiana De-
partment of Health, Appellants–Defen-
dants,

v.

COMMUNITY CARE CENTERS, INC.,
d/b/a New Horizons Developmental
Center, Appellee–Plaintiff.

No. 18A02–9210–CV–517.

Court of Appeals of Indiana,
Second District.

Oct. 20, 1994.

Rehearing Denied Dec. 2, 1994.

Pamela Carter, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellants.

Scott E. Shockley, Defur, Voran, Hanley, Radcliff & Reed, Muncie, William P. Tedards, Jr., Washington, DC, for appellee.

## OPINION

SULLIVAN, Judge.

The Family and Social Services Administration (FSSA) and the Indiana Department of Health (IDH), (collectively referred to as Appellants), bring an interlocutory appeal contesting the trial court's grant of a preliminary injunction and stay in favor of Community Care Centers d/b/a New Horizons De-

velopmental Center. (New Horizons).[1] This appeal has been consolidated with another interlocutory appeal contesting the trial court's determination that Appellants had violated the injunction and stay. We affirm the trial court as to the injunction and stay violations. We reverse the determination that no bond is due, and remand for further proceedings.

The issues presented in this appeal are stated as follows:

I. Whether the trial court erred in determining that New Horizons would suffer irreparable harm should an injunction not issue;

II. Whether the trial court erred in considering the harm to the patients of New Horizons should an injunction not issue;

III. Whether the trial court erred in determining that New Horizons was likely to succeed upon the merits of its claim;

IV. Whether the trial court erred in determining that Appellants' collection scheme was likely to prove invalid or illegal;

V. Whether the trial court erred by failing to require New Horizons to post bond pursuant to Trial Rule 65 or I.C. 4-21.5-5-9; and

VI. Whether the trial court erred in determining that the Appellants had violated the injunction and stay.

Under the federal Medicaid program, the federal government contributes funds to cover between fifty and eighty-three percent of the cost of patient care, and the state is responsible for the remainder. 42 U.S.C. § 1396d(b); *Lett v. Magnant* (1992) 7th Cir., 965 F.2d 251, 252. Although participation is voluntary, once a state chooses to participate, it must comply with federal Medicaid laws and regulations. *Lett, supra.*

The original Medicaid Act required participating states to reimburse facilities for the "reasonable costs" of caring for Medicaid recipients. 42 U.S.C. § 1396a(a)13(E) (Supp. III 1979); *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.* (1993) Ind.,

622 N.E.2d 935, 940, *cert. denied*, —— U.S. ——, 114 S.Ct. 1302, 127 L.Ed.2d 654. As a result, nursing facilities were generally paid the actual costs of caring for Medicaid recipients. *Lett, supra,* 965 F.2d at 252. To aid in implementing the federal law, Indiana promulgated I.C. 12-1-7-17 (Burns Code Ed.1976). *See Tioga Pines, supra.* The statute provided that state reimbursement rates should be predicated upon "a reasonable cost related basis. . . ." *Id.*

In 1980, Congress enacted the Boren Amendment which replaced the reasonable-cost standard. *Lett, supra.* Instead of paying actual costs, states are now permitted to pre-set a reasonable rate for various types of services. *Lett, supra* at 253. The result is that each facility is paid the pre-set rate for each service, regardless of the actual cost. *Id.* In response to the Boren Amendment, Indiana amended I.C. 12-1-7-17 in 1984 to track, almost verbatim, the federal regulation. *Tioga Pines, supra* at 941.

The Medicaid program classifies long-term facilities into two categories: nursing facilities (NF) and intermediate care facilities for the mentally retarded (ICF/MR). 42 U.S.C. § 1396d(a)(14), 1396d(f); *Lett, supra* at 253. An ICF/MR is required to provide a higher level of care than an NF and is therefore reimbursed at a higher rate. *Lett, supra* at 253. In 1984, Indiana established a level of care between NF and ICF/MR, called Rule 7, which is not mandated by the federal Medicaid Act. *Id.* at 254; Ind.Admin.Code tit. 410, art. 16.2 (1992) (hereafter 410 IAC 16.2). A facility serving three or more developmentally disabled individuals must provide Rule 7 treatment, which includes retaining a qualified mental retardation professional, developing and implementing an habilitation program, and arranging for work shop, work activity, and work adjustment programs. *Lett, supra* at 253; 410 IAC 16.2. The Appellants do not grant any extra reimbursement for a Rule 7 facility. Instead, reimbursement is paid at the same level as an NF facility. *Id.*

---

1. New Horizons is owned by Community Care, a corporation which owns and operates a chain of sixteen long-term care nursing facilities in Indiana. New Horizons is but one of these facilities, and was previously known as Hamilton Heights.

New Horizons, a Rule 7 facility, brought suit in federal court alleging that the State practice of reimbursing a Rule 7 facility at an NF rate did not comply with federal regulations. *Id.* New Horizons also brought a pendant state claim alleging that the reimbursement practice did not comply with Indiana's own regulations regarding Medicaid reimbursement. *Lett, supra* at 252. In support of its allegations, New Horizons cited and argued the old reasonable-cost standard of the original Medicaid Act, instead of the Boren Amendment. *Id.* at 256. Judge McKinney found that Appellants' reimbursement rate violated the Medicaid Act and ordered Appellants to readjust New Horizons' reimbursement rate to reflect its actual costs, retroactive to January 1, 1989. *Id.* at 254. As a result of Judge McKinney's order, Appellants paid New Horizons $1,931,343.50.

Upon appeal, the Seventh Circuit reversed Judge McKinney's decision and order because it was based upon the old reasonable-cost standard and not upon the Boren Amendment. *Lett, supra* at 256. The Seventh Circuit, upon jurisdictional grounds, dismissed New Horizons' claim that the reimbursement did not comply with Indiana law. *Id.*

New Horizons then pursued administrative remedies, based solely upon Indiana law, claiming that the reimbursement paid in the years 1989 through 1991 for Rule 7 treatment was inadequate. New Horizons' argument in these proceedings was and is that, although Appellants were not required to pay a greater amount for Rule 7 services under federal law, New Horizons was required to do so under Indiana law. Accordingly, it is contended that some, if not all, of the pay-

ment made pursuant to Judge McKinney's order was not an overpayment, and therefore is not subject to recoupment by the State. New Horizons continues to provide service to its residents as a certified Medicaid provider.[2]

Pending resolution of the rate disputes, Appellants attempted to recoup $476,425.38 of money paid pursuant to Judge McKinney's order by withholding payment due New Horizons for current services. The record reveals that Appellants owed New Horizons $147,863.38 for services performed in the period ending October 6, 1992. Pursuant to their collection scheme, Appellants withheld the entire $147,863.38. Appellants also evinced their intent to continue withholding all payment for current services for several months. On October 14, New Horizons sought judicial review of Appellants' decision to recoup the alleged overpayment in this manner, as well as a temporary restraining order and preliminary injunction to prevent Appellants' actions. The next day, Appellants sent a letter to New Horizons, demanding payment of the balance of the entire amount of the overpayment, $1,783,480.20, within thirty days.

At the preliminary injunction hearing, New Horizons argued that Appellants may not recoup an overpayment by withholding payment for current services, that Appellants may not recoup an alleged overpayment while administrative appeals are pending to determine whether the payment was actually an overpayment,[3] and that Appellants may not recoup payment in a manner likely to cause extreme financial distress to a Medicaid provider.

---

**2.** Relying upon Judge McKinney's order, an administrative law judge granted summary judgment in favor of New Horizons on the 1989 rate dispute. Because the ALJ's decision was based upon Judge McKinney's erroneous order, the Indiana State Board of Public Welfare reversed the decision and remanded for further proceedings. The status of the 1990 and 1991 rate disputes is not evident from the record. It is important to note that there is no evidence that any of the administrative appeals concerning the rate disputes have reached final administrative resolution.

Although, it appears that on remand from the Board of Public Welfare, an ALJ granted sum-

mary judgment in favor of Appellants in the 1989 rate dispute, such is not a final decision. Apparently, the 1990–91 disputes are still ongoing.

**3.** Although not set out in the pleadings, in its brief, and before the trial court, New Horizons also argued that Ind.Admin.Code tit. 405, art. 1, r. 4, § 1(d) (1992) prohibited Appellants from collecting a disputed overpayment while an administrative appeal is pending. Matters not pleaded, but actually litigated are deemed to have been tried by consent of the parties. *Svetich v. Svetich* (1981) 3d Dist.Ind.App., 425 N.E.2d 191.

Although Appellants' decision regarding collection procedures was not final, the trial judge exercised jurisdiction pursuant to I.C. 4–21.5–5–5, which authorizes judicial review of non-final agency actions. The judge stayed Appellants' collection proceedings and entered a preliminary injunction requiring Appellants to bring payment for current services up to date. Appellants then brought this interlocutory appeal of the trial judge's preliminary injunction and stay order.

While Appellants' appeal from the original order was pending in this Court, New Horizons filed a petition to enforce or modify the trial court's preliminary injunction. We denied the petition to modify and instructed the trial court to determine whether its order for injunctive relief had been violated by Appellants. The trial court determined that Appellants had violated the order. Appellants took an interlocutory appeal from this order, which was filed under a different cause number. Appellants moved to consolidate the appeals. That motion was granted on August 15, 1994.

We will first address the propriety of the trial judge's original order, and will then address his ruling that Appellants had violated that order.

### PRELIMINARY INJUNCTION

The trial court granted a preliminary injunction requiring Appellants to bring current any and all claims for services rendered by New Horizons.[4] Appellants challenge this grant upon several grounds.

 A grant of a preliminary injunction is erroneous only where the trial judge clearly abused his discretion. *Fumo v. Medical Group of Michigan City, Inc.* (1992) 3d Dist. Ind.App., 590 N.E.2d 1103, 1107, *trans denied.* An abuse of discretion exists only where the trial court's findings are insuffi-

cient to support the judgment. *Id.* at 1107–08. The trial court's findings do not support the judgment where they are clearly erroneous or insufficient to disclose a valid basis for the legal result reached by the judgment. *Id.* The findings are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Fumo, supra* at 1107–08.

### I. *Irreparable Harm*

The trial judge determined that New Horizons would suffer irreparable harm if Appellants were allowed to collect the overpayment as planned because the facility would be forced to close within a few months. Appellants do not challenge the court's factual findings. Rather, they argue that business failure does not rise to the level of irreparable harm.

#### A. *Status Quo*

 "[O]nly harm which a court cannot remedy following a final determination on the merits may be deemed ... irreparable...." *Wells v. Auberry* (1982) 1st Dist.Ind.App., 429 N.E.2d 679, 683; *see also Fumo, supra,* 590 N.E.2d at 1108. This gives effect to the main purpose of a preliminary injunction, which is to maintain the *status quo* pending resolution of the underlying action. *Wells, supra* at 683. "If irreparable injury were to occur during the course of the litigation, the judgment, in effect, would be rendered meaningless." *Id.*[5]

 The trial court found that if Appellants were allowed to collect the disputed overpayment as planned, New Horizons would be out of business within a few months. Absent an injunction requiring Appellants to bring current all unpaid claims, a final decision that Appellants may not recoup payments in a manner causing extraordinary

---

4. The trial judge granted a preliminary injunction in addition to a stay because only an injunction may require the enjoined party to act. *Scales v. Hospitality House of Bedford* (1992) 2d Dist.Ind.App., 593 N.E.2d 1283, 1286, *trans. denied.* A stay may only require a party to refrain from acting. *Id.*

5. This concern is identical to that addressed by I.C. 4–21.5–5–5, which allows judicial review of

non-final agency decisions upon a showing of irreparable harm. Harm is irreparable under that section "[w]hen the harm alleged cannot be rectified by either a favorable agency decision or judicial review following a final order...." *Indiana Civil Rights Comm'n v. Kightlinger & Gray* (1991) 5th Dist.Ind.App., 567 N.E.2d 125, 128, *trans. denied.*

financial hardship for the provider would be too late. New Horizons already would have suffered extraordinary financial hardship. It is of no moment that New Horizons could bring suit for damages caused by Appellant's collection procedures should those procedures be held unlawful. The focus of the inquiry is whether a favorable judicial decision in the current suit could rectify the harm done. In effect, denial of an injunction would render moot any judicial resolution of the issue. Once New Horizons is forced to close its doors due to the Appellants' collection policy, any decision granting relief from such policy would be without effect.

### B. *Adequate Legal Remedy*

Appellants cite three recent cases stating, "[m]ere economic injury" does not constitute irreparable harm. *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr.* (1991) 4th Dist.Ind.App., 575 N.E.2d 303, 306, *trans. denied; Scales v. Hospitality House of Bedford* (1992) 2d Dist.Ind.App., 593 N.E.2d 1283, 1286; *Indiana State Dept. of Welfare v. Stagner* (1980) 4th Dist.Ind.App., 410 N.E.2d 1348, 1353. In *Stagner*, the Fourth District cites federal law for the proposition that "threatened business failure" is not an irreparable injury. 410 N.E.2d at 1352 (quoting *Virginia Petroleum Jobbers Ass'n v. FPC* (1958) D.C.Cir., 259 F.2d 921, 925). "Mere injuries, however, substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Id.* at 1353. In all three cases, the courts determined that actions likely to cause imminent closing of a nursing home did not rise to the level of irreparable harm. We disagree.

■ These cases fail to note that under Indiana law, irreparable harm is not a single element, separate and distinct from an inquiry into legal remedies. As stated above, irreparable harm is harm which a court cannot remedy following a final determination. *Wells, supra,* 429 N.E.2d at 683; *Fumo, supra,* 590 N.E.2d at 1108. In other words, irreparable harm is harm that has no adequate legal remedy. An inquiry into irreparable harm necessarily entails an inquiry into whether the proponent of the injunction has an adequate remedy at law.

" 'It is not enough to defeat injunction that there is a remedy at law.' " *McKain v. Rigsby* (1968) 250 Ind. 438, 237 N.E.2d 99, 103. Rather, a legal remedy is adequate only where it is as "plain, complete and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity." *Id.* The trial judge has a duty to determine whether the legal remedy is as full and adequate as the equitable remedy. *Id.*

■ Injunctive relief should be granted if it is more practicable or efficient than that afforded by law. *Hatcher v. Graddick* (1987) 3d Dist.Ind.App., 509 N.E.2d 258, 260. An injunction is appropriate where a refusal to grant an injunction " 'throws upon the plaintiff an unusual and unconscionable expense . . . notwithstanding a remedy exists at law.' " *Haines v. Trueblood* (1918) 67 Ind. App. 456, 465, 119 N.E. 383 (cited with approval in *McKain, supra* ). *Accord, Porter Memorial Hosp. v. Malak* (1985) 3d Dist.Ind. App., 484 N.E.2d 54, *trans. denied.*

Contrary to the Fourth District's statements in *Stagner, supra,* the trial judge may consider "time, energy, and money expended in the absence of a stay" in deciding whether irreparable injury will occur. In fact, it is the trial judge's duty to consider such factors. *McKain, supra.* We do not believe that a test based solely upon "mere economic injury" gives the trial judge enough leeway to fulfill his duty regarding the grant or denial of an injunction.

■ Imminent business failure is an appropriate basis for finding that the legal remedy is inadequate, thus causing the plaintiff irreparable harm. In *Xenia Real Estate Co. v. Macy* (1897) 147 Ind 568, 47 N.E. 147, our Supreme Court held that where the defendants threatened to cut off an electric company's power source, the electric company would not have an adequate remedy at law because it could not obtain gas from another source without delay and great expense, and because it would be subject to damage claims for breach of contract from its consumers. In *Unishops, Inc. v. May's Family Ctrs., Inc.* (1980) 3d Dist.Ind.App., 399 N.E.2d 760, Unishops contracted with May's department

store to run the men's and boy's departments of the May's stores and to refrain from operating such departments for May's competitors. The Third District found that May's did not have an adequate remedy at law because it would lose "incalculable dollars and the hours it had expended in the development of its lengthy relationship with Unishops.... [and] would find it extremely difficult to rapidly obtain another licensee to replace Unishops." 399 N.E.2d at 765. In *City of Muncie v. Pizza Hut of Muncie, Inc.* (1976) 1st Dist. 171 Ind.App. 397, 357 N.E.2d 735, the First District held that street blockades which cut off access to the Pizza Hut restaurant "caused irreparable injury to the businesses because of speculative damages and the continuing nature of the injury." 357 N.E.2d at 738. In all of these cases, an injunction issued to protect serious damage to an ongoing business. This is entirely consonant with Indiana law.

We note that the First District re-examined the litigation as first considered by the Fourth District.[6] In so doing, it rejected the Fourth District's earlier position to the effect that threatened business failure does not constitute irreparable harm. *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.* (1994) 1st Dist.Ind.App., 637 N.E.2d 1306. The First District held that imminent closure of a nursing home is irreparable harm.[7]

There is a valid legal basis for the the trial judge's conclusion that New Horizons would suffer irreparable harm absent an injunction. Accordingly, we uphold the trial judge's findings and conclusion upon this issue.

## II. *Standing*

Appellants argue that the patients of the facility have no standing to challenge Appellants' procedures for recouping the alleged overpayment.

The trial judge, in granting the injunction, concluded that the public interest was compelling. Specifically, the judge found that closure of New Horizons would displace eighty-one severely retarded and handicapped residents, many of whom had lived at the facility for years. The court found that disruption would be harmful, and few, if any, alternative placements were available. The court found that some of the families of these residents had moved to homes near the facility to be near their children and would not be capable of moving to another location.

Appellants' argument misses the mark. No patients of New Horizons are parties to this litigation; none have appeared before the trial court; none have filed briefs. There is no standing issue in this case. Boiled down, Appellants argument is that the trial judge may not consider the interests of persons or entities other than the proponent of the preliminary injunction.

■ Not only does the trial judge have the right to consider interests other than that of the proponent, the trial judge has a duty to do so. "[T]he trial court has a duty to consider whether the public interest will be promoted or harmed by the granting or denying of the application for a preliminary injunction." *Mid–America Marketing, Inc. v. Falender Development Corp.* (1980) 1st Dist.Ind.App., 406 N.E.2d 372, 377. " 'Courts of equity may, and frequently do, go much further both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.' " *Wells, supra,* 429 N.E.2d at 684–85.

■ Here, the trial court found that substantial public interest would be served by granting the preliminary injunction. We hold that the trial judge has the authority,

---

6. The Supreme Court of Indiana considered a consolidated appeal after the Fourth District opinion became final. In that decision, our Supreme Court reversed a judgment of the Hancock Circuit Court. *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.* (1993) Ind., 622 N.E.2d 935. Thereafter the matter came before the First District in *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.* (1994) 1st Dist.Ind.App., 637 N.E.2d 1306.

7. The First District contends that the Fourth District decision regarding irreparable harm in the first *Tioga Pines* case may be reconciled with its decision on this issue in the second. 637 N.E.2d at 1316. We express our opinion that the two cannot be reconciled and that the First District opinion rests upon sounder reasoning.

and indeed, the duty, to consider whether granting or denying a preliminary injunction would further public interest. Appellants do not challenge the factual basis supporting this conclusion or the conclusion itself. We uphold the court's findings of fact and conclusions of law upon this issue.[8]

### III. Likelihood of Success Upon the Merits

Appellants argue that the trial judge's decision lacked sufficient legal basis. This argument is essentially an attack upon the requirement that an injunction may not issue unless the claim is likely to succeed upon the merits.

 It is not our place to decide, at this stage of the proceedings, whether New Horizons ultimately will prevail upon its claim that Appellants cannot recoup payments in the manner planned. "An applicant for preliminary relief is not required to plead and prove a case which would entitle him to relief upon determination of the merits." *Rees v. Panhandle Eastern Pipe Line Co.* (1978) 2d Dist., 176 Ind.App. 597, 377 N.E.2d 640, 646. Neither do we express our opinion regarding New Horizons' likelihood of success upon the merits. We only determine whether the likelihood of success is so improbable as to render the trial court's determination erroneous as a matter of law. It is important to note that where the proponent of an injunction shows great danger of imminent irreparable harm, the required showing of likely success upon the merits is less stringent. *Wells, supra,* 429 N.E.2d at 683.

### A. Withholding Payment for Current Services

 In support of the finding that New Horizons would likely prevail upon its claim that Appellants could not withhold payment for current services, the trial judge relied upon *Magnant v. Ambulatory Renal Services, Inc.* (1991) 2d Dist.Ind.App., 575 N.E.2d 1029. In that case, the owner of

Ambulatory Renal Services, Inc. (ARS), a state-certified Medicaid provider, was indicted for filing a false Medicaid claim one month after ARS was incorporated. Even so, the State had issued authorization to ARS to perform certain services for Medicaid recipients. However, five months after the indictment, the State determined that it would withhold payments for pre-approved services already performed pending the outcome of the federal trial. The Second District held that the State could not collect any alleged overpayments by withholding payment for performance of pre-approved services. *Id.* at 1031. "[T]he [State] cannot withhold payment for a claim which has been issued prior authorization unless the reason for the withholding bears some reasonable relationship to the claim for which payment is being withheld." *Id.* at 1034.

Appellants argue that *Ambulatory Renal Services* is distinguishable because the services in question were pre-approved. In this case, while the services for which Appellants are withholding payments were not pre-approved, they do not bear any relationship to the services which were allegedly over-reimbursed under Judge McKinney's order. Further, as in *Ambulatory Renal Services,* Appellants withheld payments without granting New Horizons notice or a hearing. We find *Ambulatory Renal Services* sufficiently analogous that the trial judge's reliance thereon is appropriate.

### B. Recoupment While Administrative Appeal is Pending

The trial judge relied upon Ind.Admin.Code tit. 405, art. 1, r. 4, § 1(d) (1992) (hereafter 405 IAC 1–4–1(d)) in concluding that New Horizons would likely prevail upon its claim that Appellants could not begin recouping payments until the administrative appeals process regarding the rate dispute was completed. That section provides that "any action by the department to recover an overpayment from previous rate reimbursements, either through deductions of future

---

8. Appellants argue that the trial judge may not consider the harm to third parties when determining whether irreparable harm exists. Because we decide that threatened business failure may rise to the level of irreparable harm, we

need not address this question. We do note however, that in *Tioga Pines, supra,* 637 N.E.2d at 1317, the First District appears to have held that harm to third parties may be considered in the irreparable harm inquiry.

payments or otherwise, shall await the completion of the provider's administrative appeal within the department...." *Id.* The trial judge found that Appellants violated their own policy by attempting to recoup payments while New Horizons was still pursuing an administrative decision regarding whether the payments were due New Horizons.

Appellants argue that the trial judge could not rely upon the rule as evidence of their collection policy because it had been enjoined, albeit upon different grounds. Appellants do not cite any authority in support of this proposition. The trial judge specifically recognized the injunction, but found that the agency had no other policy regarding collection procedures. Rules 1 through 4 of 405 IAC, Article 1 were enjoined by the Blackford and Hancock Circuit Courts because the rate-setting measures contained therein were promulgated without the findings and research required by the Medicaid Act. *See Tioga Pines, supra,* 637 N.E.2d at 1314.

It was not error for the trial court to rely upon 405 IAC 1–4–1(d) because only the portions of those rules relating to rate-setting had been enjoined. Subsection 4(d) refers only to Appellants' policy for collecting overpayments. No party has litigated, and no court has decided that this policy or rule is deficient in any way. Appellants did not produce any evidence before the trial judge regarding their policy for collections while administrative appeals are pending; nor did Appellants provide any evidence to contradict the policy embodied in 405 IAC 1–4–1(d). Given the evidence, the trial court's findings are not clearly erroneous and support the judgment.

### C. *Recoupment Likely to Cause Extreme Financial Hardship*

The trial judge relied upon parallel provisions of the Medicaid Act in determining that New Horizons would likely prevail upon its claim that Appellants cannot collect overpayments in a manner likely to cause extreme financial hardship to the Medicaid provider. The judge determined that these provisions dictate that recovery must be structured, if possible, in a way that will not harm the facility or the residents. Medicare Intermediary Manual, Part 2, §§ 2224, 3709.3; Medicare Carriers Manual, § 7116.[9] Appellants do not attack the judge's reliance upon these provisions. Therefore, we uphold this finding.

Appellants, however, rely upon Ind.Admin.Code tit. 405, art. 2, r. 1, § 5(d) (1992) (hereafter 405 IAC 1–1–5(d)) as authority for collecting a lump sum payment. That subsection provides that where Appellants determine that an overcharge has occurred, they must send a demand letter to the provider seeking reimbursement within thirty days. Appellants also cite I.C. 12–15–23–2 (Burns Code Ed.Repl.1992), which states that the agency "may" enter into an agreement with the provider regarding the repayment of the overpayment.

Appellants argue that "may" is not mandatory, and therefore, taken together, subsection 5(d) and I.C. 12–15–23–2 do not require Appellants to work out a payment schedule with the provider. However, 405 IAC 1–1–5(e) governs the situation where "a Medicaid provider fails to reimburse the office for the amount of overpayment, *or fails to enter into an agreement* for the repayment of any overpayment" (emphasis supplied) and contemplates assessment of interest upon the basic amount. It does not indicate absolute entitlement to a lump sum recoupment. If a payment agreement were available only at the option of Appellants, it could not be said that the provider "fail[ed]" to enter into an agreement. This language contemplates that an agreed payment plan is available at the option of the Medicaid provider.

The trial court also relied upon an affidavit and testimony by Jay Keesling, Assistant Director, Office of Medicaid Policy and Planning (OMPP), that IDH generally does not attempt to recoup overpayments by lump sum setoffs. Appellants argue that this testimony is not pertinent because it pertains "only to rate adjustments as the result of an audit." Reply Brief of Appellant at 11. However, 405 IAC 1–1–5, which the Appel-

---

9. Although the trial court does not specifically refer to these provisions, New Horizons cited these sections in its motion for preliminary injunction.

lants deem controlling in this case, also directs that determinations of overpayment shall be made according to audit. 405 IAC 1–1–5(b) and (c).

The evidence before the trial judge points to rules which arguably requires IDH to enter into a repayment plan when it is determined that an overpayment has been made. The evidence also shows that in some circumstances, Appellants should seek no recoupment. Although none of the evidence outlines a specific rule requiring Appellants to refrain from recoupment procedures which would seriously damage the financial condition of the provider, all of these policies seek to prevent such a result. We hold that the trial court's finding that New Horizons would likely succeed upon the merits of its claim is not clearly erroneous and supports the grant of a preliminary injunction.[10]

### IV. Failure to Post Bond

Appellants argue that the trial court erred in failing to require New Horizons to post security.

Rule 65(C) of the Indiana Rules of Trial Procedure states, "No ... preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

■■■ The fixing of the amount of bond pursuant to T.R. 65 is within the discretion of the trial judge. *Peters v. Davidson, Inc.* (1977) 1st Dist., 172 Ind.App. 39, 359 N.E.2d 556. The trial judge does not abuse his discretion by refusing to require a security bond where the opposing party fails to pro-

vide evidence that he would suffer any damages or costs should it later be determined that the injunction was wrongfully issued. *Kennedy v. Kennedy* (1993) 1st Dist.Ind. App., 616 N.E.2d 39, 44, *trans. denied.*

■■■ The trial court found here that, should the payments made pursuant to Judge McKinney's order be found to be overpayments, Appellants would be able to recover all sums with interest. The record reveals that Appellants did not claim they would suffer any damages should the injunction be erroneously issued. The trial court did not abuse its discretion in failing to require New Horizons to post a security bond.[11]

### STAY

The trial judge also entered a stay, pursuant to I.C. 4–21.5–5–9, prohibiting Appellants from suspending, setting off, or ordering the withholding of payment due New Horizons for current services. The stay also prohibited Appellants from taking any further action in pursuit of collection.

### A. Illegal or Invalid Action

Appellants argue that the stay is erroneous because, in finding No. 18, the trial court stated, "the Court may review a non-final agency action to the limited extent that it may issue a stay of the action ... if irreparable harm would occur...." Record at 111.[12]

■■■ Appellants correctly point out that the trial judge has mistakenly intermingled I.C. 4–21.5–5–2 (Burns Code Ed.1990) with I.C. 4–21.5–5–9. Subsection 2 allows for judicial review of a non-final agency decision when the plaintiff establishes: (1) immediate and irreparable harm, and (2) that no ade-

---

10. We note that, in a subsequent proceeding, Thomas Klages, director of program planning for the OMPP, testified that, when collection procedures would cause a facility to close, the OMPP "would certainly attempt to sit down and work out whatever issues are at hand." Record at 150.

11. In their reply briefs, Appellants argue that if they are not allowed to recoup the overpayment from New Horizons, the federal government will recoup its share of the overpayment from them. The record reveals that Appellants did not make this argument to the trial court nor produce any evidence that the federal government had at-

tempted to or threatened to collect from them. Issues not presented to the trial court may not be raised upon appeal. *Franklin Bank and Trust Co. v. Mithoefer* (1990) Ind., 563 N.E.2d 551.

12. Although the trial court refers to the specific Indiana Code section as I.C. 4–21.5–5–5, it is evident that the statute to which the trial court refers actually is subsection 2, not 5. Subsection 2 deals with judicial review of a non-final order, while subsection 5 deals with the time requirements for filing a praecipe. In their argument, Appellants refer to the requirements of subsection 2, not 5.

quate legal remedy exists. The irreparable harm requirement pertains only to whether a trial court should intercede in the administrative process and grant review of a non-final agency decision.[13] The irreparable harm requirement does not pertain to whether the trial court should grant a stay; a stay of agency action is governed by subsection 9.

██ ██ Subsection 9 provides that a trial court may stay agency action if the court finds such action is invalid or illegal. Although the trial court did not specifically use the words invalid or illegal, it found that New Horizons was likely to succeed upon its claim that Appellants could not collect the alleged overpayment as planned. Implicit in the trial court's findings is a determination that Appellants' decision to collect fees in the planned manner was most likely invalid. This finding is supported by the same evidence supporting the court's finding that New Horizons was likely to succeed upon the merits.

Pending resolution of Appellants' interlocutory appeal to this Court, we granted a stay of that portion of the trial court's stay which prohibited Appellants from attempting to collect any money from New Horizons. We now conclude that the trial court did not abuse its discretion in finding that Appellants' attempts to collect the alleged overpayment during the pendency of New Horizons' administrative appeal was invalid or illegal pursuant to 405 IAC 1–4–1(d). Accordingly, we dissolve our stay, and reinstate the trial judge's stay of Appellants' attempts to collect the alleged overpayment.

### B. *Bond*

██ Appellants also claim the grant of stay was erroneous because the court failed to order New Horizons to post bond. I.C. 4–21.5–5–9 (Burns Code Ed.1990), states that a stay may only issue when a "bond is filed that is conditioned upon the due prosecution of the proceeding for review and that the petitioner will pay all court costs and abide by the order of the agency if it is not set

aside.... [T]he amount of the bond must be at least five hundred dollars ($500)."

The purpose of a bond under I.C. 4–21.5–5–9 is markedly different than those purposes under T.R. 65. Although the trial judge explained the reason for not requiring a bond under T.R. 65, he did not specify the reason for not requiring a bond under I.C. 4–21.5–5–9. Moreover, while the trial judge has discretion to determine the amount of bond, Rule 59 of the Indiana Rules of Trial Procedure, unlike I.C. 4–21.5–5–9, contains no minimum bond requirement. Under I.C. 4–21.5–5–9, the trial judge has the discretion to set the amount of bond, but it may not be less than $500.00. We hold that the trial judge abused his discretion in failing to require New Horizons to post bond of at least $500.00.

### VIOLATION OF THE TRIAL COURT'S ORDER

██ Pending our decision regarding the propriety of the trial court's original order, New Horizons continued its efforts to become certified as an ICF/MR, which would entitle it to a higher rate of reimbursement. In pursuit of ICF/MR status, New Horizons underwent a survey conducted by the IDH, a department within the FSSA. In February of 1993, the IDH determined that New Horizons met the requirements for an ICF/MR and certified the facility to the OMPP, another department within the FSSA. The OMPP originally approved New Horizons' change in classification and enrolled the facility in the Medicaid program as an ICF/MR. However, the OMPP then concluded the enrollment was a "clerical error" and rescinded the enrollment thirty-seven days later. Record at 300. The OMPP has refused to enter into a provider agreement with New Horizons and refuses to pay New Horizons at the ICF/MR rate. The OMPP stated that it would continue to reject New Horizons application until the facility paid Appellants $2,412,327.40.

---

**13.** Throughout their briefs, Appellants argue that an injunction may not issue because New Horizons did not show irreparable harm. Appellants never argue that judicial review of a non-final agency action was unwarranted because no ir-

reparable harm exists. Because Appellants do not claim that the trial court's intervention was inappropriate due to lack of irreparable harm, we do not discuss that element *vis-a-vis* I.C. 4–21.5–5–2.

The trial court found that the OMPP's refusal to pay New Horizons at the ICF/MR rate violated the injunction. The trial court ordered the FSSA and its accountant to cease withholding the provider agreement, to bring current all payments due New Horizons for ICF/MR services, and to continue to pay New Horizons at the ICF/MR rate.

## I. *Violation*

Appellants argue that their actions did not fall within those proscribed by the order. "A trial court is given broad discretion in creating, modifying, and enforcing preliminary injunctions." *Implement Service, Inc. v. Tecumseh Products Co.* (1989) S.D.Ind., 726 F.Supp. 1171, 1183.

The original order prohibited Appellants from attempting to collect the payment by "suspending, setting off, or in any other way ordering the withholding or delaying of payment of funds due and owing [New Horizons] pursuant to its provider agreement with the defendants and for its performing services for Medicaid residents...." Record at 20.

Appellants argue that because New Horizons was under an NF agreement and was being paid at an NF rate at the time of the original order, refusing to pay New Horizons at the ICF/MR level does not violate the original order. However, the order also prohibited Appellants from withholding funds for New Horizons' "performing services for Medicaid residents." Contrary to Appellants' argument, the trial court's order is not limited to payments made pursuant to the original provider agreement.

An injunction or stay is violated where "the order ... clearly embrace[s] and prohibit[s] the act complained of, and the act [is] in contravention of the spirit, as well as the letter, of the order." *Mourer v. State* (1886), 107 Ind. 539, 542, 8 N.E. 561, 562. Appellants assert that the spirit and the letter of the preliminary injunction is to prevent the recoupment of overpayments by offset. Appellants further argue that refusing to pay New Horizons at the ICF/MR level is not a recoupment or an offset. Since February, placement officials in the Department of Ag-

ing Rehabilitations and Services, another unit of the FSSA, have placed retarded individuals who required ICF/MR treatment in the New Horizons facility. The trial court found that New Horizons is required by law to provide ICF/MR services to these residents,[14] and Appellants do not dispute that it is providing services at that level. Appellants admit that the difference between the NF and ICF/MR reimbursement rates between February and October is over $1 million. In essence, Appellants are requiring New Horizons to provide ICF/MR services at a discount of $1 million. Paying New Horizons $1 million less than its services are worth is an offset. Receiving ICF/MR services at a savings of $1 million is a recoupment. The trial court did not abuse its discretion in finding that Appellants' action constitutes withholding money for "performing services for Medicaid residents" in contravention of the trial court's order.

Finally, Appellants argue that whether New Horizons should be "enrolled" in the Medicaid program as an ICF/MR rather than an NF, is not embraced by the original order. At first gloss, this argument is appealing. If Appellants' position is that New Horizons does not meet the requirements of an ICF/MR, we might be constrained to hold that that action is not encompassed by the original injunction. However, the IDH determined that New Horizons did meet ICF/MR requirements. In fact, the OMPP originally enrolled New Horizons as an ICF/MR. The only step left in the process was for the OMPP to enter into a provider agreement with New Horizons. The trial court found that the provider agreement is a mere technicality. This finding is supported by the testimony of Karen Smith–Filler who stated that in the seven years she had been employed with the OMPP, the Office had never refused to sign a provider agreement with a facility certified by the IDH. The trial court did not err in concluding that withholding the provider agreement is just another method of delaying payment to New Horizons for services rendered and is em-

---

14. Appellants do not dispute the trial court's finding that, due to the ICF/MR certification,

New Horizons is legally required to provide ICF/MR services.

braced by the broad terms of the original injunction.[15]

## II. *Irreparable Harm*

Appellants argue that the trial court's order was in error because withholding the provider agreement and refusing to pay New Horizons at the ICF/MR rate did not result in irreparable harm to New Horizons.

Appellants themselves assert that the difference between the ICF/MR rate and the rate paid New Horizons between February and October is over $1 million, but claim that this is not an interruption of "cash flow." Brief of Appellants (filed 2/17/94) at 21. We disagree. Although it is not an "interruption", it is a withholding of cash flow to which the provider is entitled. The trial court did not abuse its discretion in granting New Horizons relief from Appellants' actions.

## III. *Modification*

Appellants argue that the trial court's order modified the injunction and stay. Appellants correctly point out that our order denied New Horizons' request for modification and allowed the trial court to determine only whether Appellants had violated the injunction and stay as written. Appellants do not point to any specific provision of the order which they deem a modification; rather, they claim that because their actions were not prohibited by the original order, the subsequent order enjoining those actions is a modification. Because we hold that Appellants' actions fall within the scope of the original injunction and stay order, the trial court's order prohibiting the actions also falls within the purview of that order.

## IV. *Exhaustion of Administrative Remedies*

Appellants argue that New Horizons is required to take an administrative appeal from their decision to withhold the provider agreement and pay New Horizons only at the NF level. Appellants claim that the trial court lacks jurisdiction to provide relief. Appellants cite no authority for the proposition that an administrative action in violation of a court order must be appealed through the administrative process. Neither do Appellants provide authority for the proposition that a trial judge does not have jurisdiction to enjoin or stay administrative actions in violation of his injunctive order. We decline to create such authority here.

Appellants also argue that they have authority, pursuant to I.C. 12–15–22–1 (Burns Code Ed.Repl.1992), to deny a Medicaid provider's application for a provider agreement if the provider owes them money. We specifically decline to decide whether I.C. 12–15–22–1 may be interpreted in this way. Regardless of whether Appellants have the statutory authority to do so, they may not exercise this authority in violation of a court order unless that order is vacated or otherwise set aside.

## V. *Estoppel*

Because the trial court's order with respect to violation of the injunction may be upheld based upon its finding that Appellants violated Section (a) of the original order, we need not discuss whether Appellants are estopped from withholding the provider agreement.

## INSTRUCTIONS TO TRIAL COURT

Because of the procedural posture of this case, we find it necessary to remand with instructions.

### I. *Issues on Remand*

As discussed above, I.C. 4–21.5–5–5 allows the trial court to intervene in a cause before administrative remedies have been exhausted. In finding No. 18, the trial judge conveys the impression that he believes this intervention is limited to granting a stay pending a final administrative decision. That is not the case. Once the trial court properly takes jurisdiction of the matter, the issue may be decided by the trial court. Once the trial court takes jurisdiction over the issue, no administrative decision can or will be determinative.

---

**15.** Although we may not decide this issue by hindsight, we note that Appellants admit that withholding the provider agreement is prohibited by subparagraph (c) of the trial court's original order. Although subparagraph (c) had been stayed by this Court's order, as discussed above, we now dissolve our stay order, and reinstate subparagraph (c).

Accordingly, it is for the trial court to try the cause and determine whether Appellants may collect an overpayment by withholding funds for current services, whether Appellants may collect the disputed overpayment pending resolution of New Horizons' administrative appeal, and whether Appellants may recoup payments in a manner likely to cause extreme financial difficulty to the provider.

We note that the stay provision set forth in I.C. 4–21.5–5–9 (Burns Code Ed.1990) is a stay of agency action "pending decision by *the court.*" (Emphasis supplied). The trial court stayed Appellants' collection proceedings pending administrative resolution of the underlying rate dispute. As discussed above, because 405 IAC 1–1–4(d) arguably prevents collection of disputed overpayments pending administrative resolution, this order is appropriate. However, lest there be any confusion, *trial* upon the issues in this case should not be stayed until the rate dispute is resolved. Rather, the trial court should proceed upon the merits of the case to determine whether Appellants may collect in the manner planned. Should the trial court enter final judgment in favor of New Horizons with regard to 405 IAC 1–1–4(d), the court may then enter a permanent injunction prohibiting Appellants from attempting collection pending resolution of the underlying rate dispute.

Finally, the trial court must determine what amount of bond is required by New Horizons under I.C. 4–21.5–5–2, that amount not to be less than $500.00.

## II. *Issues Not on Remand*

We note that the issues involved in this appeal are quite limited. Because the trial court, in its findings and conclusions, and the parties, in their briefs to this court, have discussed collateral issues, we delineate the issues not before the trial court.

### A. *Legality of Rate–Setting Scheme*

The trial court found that New Horizons was likely to prevail upon its claim that Appellants' rate-setting formulae for 1989 through 1991 did not comply with Indiana law. In support of this conclusion, the trial court relies upon Judge McKinney's original order in *Lett, supra,* and upon *Scales, supra.* Appellants devote much of their briefs to an argument that this reliance is misplaced.

However, the legality of Appellants' rate-setting scheme has no bearing upon the issue in this case, *i.e.,* whether Appellants may collect funds in the manner planned. We specifically decline to determine whether *Lett, supra,* and *Scales, supra,* are appropriate authority for New Horizons' position in proceedings not before us.

### B. *Authority to Collect Payments*

In its brief upon appeal, New Horizons argues that Appellants have authority only to collect overpayments as defined by the Indiana Medicaid statutes and regulations. Because a payment made pursuant to an erroneous court order is not defined as an overpayment, New Horizons argues that Appellants are without authority to collect.

However, the original complaint to the trial court sought only judicial review of the *manner* in which Appellants were attempting to collect the payment, not whether Appellants have the authority to collect in the first place. An issue not brought to the trial court may not be raised for the first time upon appeal. *Franklin Bank and Trust Co., supra* n. 6.

In finding No. 6 of the trial court's second order, the trial court states that this issue is before it. It is not. We do not render a decision regarding whether New Horizons may bring an administrative appeal challenging the authority of Appellants to collect payments made pursuant to a court order that is later overturned. We merely point out that it has not been properly raised in this case.

### III. *Subsection (c)*

Finally, as discussed above, this court's order staying subsection (c) of the trial court's order is dissolved, and the trial court's original order is reinstated.

The judgment is reversed in part, affirmed in part, and remanded for further proceedings.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.