FAMILY AND SOCIAL SERVICES AD-MINISTRATION, and the Indiana Department of Health, Appellants (Defendant below),

v.

COMMUNITY CARE CENTERS, INC., d/b/a New Horizons Developmental Center, Appellee (Plaintiff below).

No. 18S02–9505–CV–605.

Supreme Court of Indiana.

Dec. 15, 1997.

Pamela Carter, Attorney General, Jon Laramore, Gordon E. White, Jr., Deputy Attorneys General, Indianapolis, for Appellants.

Scott E. Shockley, DeFur, Voran, Hanley, Radcliff & Reed, Muncie, William P. Tedards, Jr., Washington, DC, for Appellee.

ON CIVIL PETITION TO TRANSFER

SELBY, Justice.

In this consolidated appeal, the Indiana Family and Social Services Administration and the Indiana Department of Health (together "FSSA")[1] appeal from the Delaware Circuit Court's entry of a preliminary injunction and stay ("Injunction") enjoining FSSA from taking certain collection actions against Community Care Centers, Inc. ("Community") and from that court's subsequent order finding that FSSA had violated the Injunction. The Court of Appeals reversed in part, affirmed in part, and remanded for further proceedings. *See Family and Social Services Administration v. Community Care Centers, Inc.,* 641 N.E.2d 1012 (Ind.Ct.App. 1994). This Court granted transfer by order

dated May 25, 1995. We now dismiss this appeal in part for mootness, vacate the remainder of the Injunction, and remand for further proceedings.

## I. Procedural Background[2]

Community, which owned and operated several nursing care facilities, brought an action in federal district court in 1990 asserting that FSSA was not providing it with adequate Medicaid reimbursement for certain of its services to mentally retarded individuals at one of its facilities, now called New Horizons Development Center ("New Horizons").[3] The federal district court agreed, and as a result, FSSA paid Community a substantial amount in additional reimbursement. However, on June 1, 1992, the Court of Appeals for the Seventh Circuit reversed the district court's decision, finding no violation of federal law. *See Lett v. Magnant,* 965 F.2d 251, 261 (7th Cir.1992). The Seventh Circuit dismissed on Eleventh Amendment grounds Community's pendant state law claim that FSSA's reimbursement rate violated Indiana law. *See id.* at 255–56. Community then pursued its state administrative remedies, asserting that it should be permitted to keep all or part of the additional reimbursement under Indiana law.

Before Community's administrative action had been resolved, FSSA began efforts to collect the additional reimbursement, including withholding amounts due to Community for its current services to Medicaid patients at New Horizons. Community responded by initiating this action. Count I of its complaint, as amended, asks the trial court to enjoin FSSA's collection efforts, and Count II asks the court to require FSSA to certify New Horizons to deliver a higher level of care at New Horizons and receive a higher rate of reimbursement. Community also filed a motion to preliminarily enjoin FSSA's collection efforts.

---

1. For simplicity, "FSSA" will also be used to refer to FSSA's predecessor agency (the Department of Public Welfare) and other related State agencies.

2. The procedural background and relevant Medicaid provisions are only briefly summarized. The opinion of the Court of Appeals, though vacated through the grant of transfer, *see* Ind.

Appellate Rule 11(B)(3), and a related federal case provide more detailed descriptions. *See Family and Social Services Administration v. Community Care Centers, Inc.,* 641 N.E.2d 1012, 1014–16 (Ind.Ct.App.1994) and *Lett v. Magnant,* 965 F.2d 251, 252–54 (7th Cir.1992).

3. This facility was previously called Hamilton Heights Health Center.

On October 22, 1992, the trial court entered the Injunction as both a stay under Ind.Code § 4–21.5–5–9 and as a preliminary injunction under Indiana Trial Rule 65. The Injunction provided:

(a) Defendants [i.e., FSSA] are enjoined from suspending, setting off, or in any other way ordering the withholding or delaying of payment of funds due and owing the plaintiff [i.e., Community] pursuant to its provider agreement with the defendants and for its performing services for Medicaid residents until such time as the administrative proceedings evidenced in Exhibit A to the Supplementary Affidavit of Myron Blackburn have reached a final conclusion.

(b) Further, defendants are ordered to bring current any and all claims heretofore submitted by plaintiff and withheld or set-off and do so instanter.

(c) Further, defendants are enjoined and stayed from further action in pursuit of collection of the [Reimbursement] until such time as the administrative proceedings previously identified in the Order have reached a final conclusion.

FSSA appealed the Injunction and the trial court's failure to order Community to post a bond pursuant to Ind.Code § 4–21.5–5–9. FSSA then appealed a later trial court order finding that FSSA had violated the Injunction. The Court of Appeals consolidated the appeals, and on October 20, 1994, it upheld the Injunction and the finding that FSSA had violated the Injunction, but reversed the trial court's failure to require Community to post a bond. *FSSA*, 641 N.E.2d at 1016–25. This Court's grant of transfer vacated the Court of Appeals' opinion, and we now review directly the orders of the trial court from which appeals were taken. *See* Ind.Appellate Rule 11(B)(3).

## II. Paragraphs (a) and (b) of the Injunction

While this appeal was pending before this Court, FSSA filed a Status Report informing the Court that Community had leased its nursing home buildings to another entity and had ceased being a Medicaid provider. FSSA contended these developments rendered paragraphs (a) and (b) of the Injunction moot and suggested that a court of equity might weigh the present circumstances differently in determining the propriety of an injunction. We ordered both parties to report their positions as to whether this appeal should be dismissed as moot. Both parties filed reports and memoranda addressing the question of mootness. In its Report, Community agreed with FSSA that paragraphs (a) and (b) of the Injunction are now moot.

Because both parties agree that paragraphs (a) and (b) of the Injunction have been rendered moot, we hereby dismiss this appeal to the extent that FSSA had sought review of these paragraphs of the Injunction.

## III. Paragraph (c) of the Injunction

In its report, Community contends that even though it is no longer a Medicaid provider, paragraph (c) of the Injunction is not moot and should be affirmed since FSSA "is now simply trying to attack the facility through the landlord rather than through the operator." FSSA contends that "the factual situation underlying the preliminary injunction has changed dramatically" and requests that this Court vacate the Injunction in its entirety and remand to the trial court for dismissal of the case. FSSA submitted a sworn declaration stating that Community no longer operates any nursing homes but just owns the buildings in which another corporation operates nursing homes. Community's filing does not disagree with this representation.

In its Findings of Fact, Conclusions of Law and Preliminary Injunction, the trial court found that Community had established a likelihood of success both on the merits of its claim that FSSA's attempted collection methods were improper and on the merits of its administrative claim to determine entitlement to the reimbursement; that Community and the mentally retarded residents of New Horizons had no adequate remedy at law and would suffer irreparable harm if a preliminary injunction were not entered; that the balance of harms favored Community and the residents; and that the public interest would· be served by granting an in-

junction. The order makes clear that the trial court was particularly concerned about what would become of the residents if New Horizons were forced to close its doors. At present, however, Community no longer operates New Horizons or any other nursing home. The potential impact of FSSA's collection efforts on New Horizons' residents may be much different now that Community is no longer New Horizons' operator but merely its landlord. Moreover, FSSA reports that on December 31, 1996, the Delaware Superior Court entered summary judgment in a separate action ("Superior Court Action") that FSSA is entitled to recover the reimbursement from Community. These developments may have caused a dramatic shift in the balance of the factors the Delaware Circuit Court considered in deciding to enter the Injunction.

■■■ Rather than reviewing the propriety of paragraph (c) of the Injunction on an outdated record or on an incomplete understanding of current circumstances, especially when the scope of paragraph (c) is not entirely clear, we conclude that the best course is to permit the trial court to reassess the propriety of preliminary injunctive relief in light of recent events. Before the Court of Appeals issued its now vacated opinion, it had stayed paragraph (c) of the Injunction. This Court now vacates paragraph (c) and remands to the trial court to reconsider Community's motion to preliminarily enjoin FSSA's collection efforts. The trial court is not foreclosed from considering whether the issue of injunctive relief should more appropriately be addressed in the Superior Court Action.

### IV. Necessity of a Bond

In certain circumstances, a person seeking judicial review of an agency's action may request the reviewing court to stay an agency's action pending a decision by the court. Ind.Code § 4–21.5–5–9(a) ("Statute"). One condition for entry of a stay under the Statute is that:

> [A] bond is filed that is conditioned upon the due prosecution of the proceeding for review and that the petitioner will pay all court costs and abide by the order of the

agency if it is not set aside. The bond must be in an amount and with a surety approved by the court. However, the amount of the bond must be at least five hundred dollars ($500).

Ind.Code § 4–21.5–5–9(a)(2).

Indiana Trial Rule 65(C) provides: "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

The trial court based the Injunction on both the Statute and on Tr.Rule 65, but it did not require Community to post a bond under either. The Court of Appeals held that Tr. Rule 65 does not require a bond in all cases but that the Statute requires the posting of a bond of at least five hundred dollars. *FSSA*, 641 N.E.2d at 1021–22.

Because the trial court may decide on remand that no preliminary injunctive relief is warranted under current circumstances, the issue of whether Community must post a bond or provide other security may become moot on remand. Moreover, if injunctive relief is granted, the trial court may decide to order a bond under the Statute and/or Tr.Rule 65, which would also render this issue moot. This Court therefore finds it premature to address at this time the issue of whether a bond would be required.

### V. Violation of the Injunction

An intermediate care facility for the mentally retarded ("ICF/MR") provides a higher level of care than a nursing facility ("NF") and is reimbursed at a higher rate. A "Rule 7 NF" provides some ICF/MR level care but is reimbursed at NF rates. At the time the Injunction was entered, New Horizons was certified as a Rule 7 NF and was in the process of seeking certification as an ICF/MR. On February 1, 1993, New Horizons was certified as an ICF/MR. However, shortly thereafter this certification was rescinded, and FSSA refused to enter into a provider agreement with New Horizons as an ICF/MR. Nevertheless, New Horizons has

provided ICF/MR services to its residents since February 1, 1993.

The trial court found that FSSA's refusal to pay Community ICF/MR rates for New Horizons' services after February 1, 1993, was a collection effort that violated the Injunction. The trial court ordered FSSA to enter immediately into an ICF/MR agreement with Community for New Horizons and to reimburse Community at ICF/MR rates for services provided by New Horizons to its residents since February 1, 1993.

FSSA complied with this order but also appealed it, and the Court of Appeals affirmed. *FSSA,* 641 N.E.2d at 1022–24. FSSA, however, did not raise this issue in its Petition to Transfer, and in its Memorandum of State Agencies Regarding Mootness, FSSA explicitly states that it is no longer contesting this order as part of this appeal. Therefore, we dismiss this aspect of this appeal as moot.[4]

### VI. Conclusion

The parties agree that paragraphs (a) and (b) of the Injunction have been rendered moot since Community no longer operates any nursing homes and is no longer a Medicaid provider. This development and other changes in circumstances may have shifted the balance of the factors the trial court considered in entering paragraph (c) of the Injunction. This Court concludes that the best course is to remand this case to the trial court for reassessment of the propriety and scope of preliminary injunctive relief in light of current circumstances.

The issue of whether FSSA violated the Injunction by refusing to pay Community ICF/MR rates for services provided by New Horizons since February 1, 1993, is now moot since FSSA has complied with the trial court's order to pay such rates and no longer seeks review of this order.

The Court therefore dismisses this appeal as it relates to paragraphs (a) and (b) of the Injunction and to the order finding FSSA in violation of the Injunction. The Court vacates paragraph (c) of the Injunction and

remands this case for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., not participating.

4.   This also appears to render moot Count II of     Community's amended complaint.